FRANK S. MOORE, SBN 158029
Law Offices of Frank S. Moore, APC
SUZY C. MOORE, SBN 151502
Law Offices of Suzy C. Moore
1374 Pacific Avenue
San Francisco, California 94109
Telephone:    (415) 292-6091
Facsimile:    (415) 292-6694

Attorneys for Defendant
ROSA RIVERA KEEL

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| OM FINANCIAL SERVICES COMPANY, | ) | No. C07-04723 MHP |
| | ) | |
| Plaintiff, | ) | **DECLARATION OF COUNSEL AND** |
| | ) | **REQUEST FOR JUDICIAL NOTICE IN** |
| vs. | ) | **SUPPORT OF DEFENDANT ROSA RIVERA** |
| | ) | **KEEL'S SPECIAL MOTION TO STRIKE** |
| ROSA RIVERA KEEL AND DOES 1 through | ) | **PURSUANT TO CALIFORNIA'S ANTI-** |
| 10, INCLUSIVE, | ) | **SLAPP STATUTE** |
| | ) | [Cal. Code of Civ.Proc., 425.16] |
| | ) | |
| Defendant. | ) | Date:  January 14, 2008 |
| | / | Time:  2:00 p.m. |
| | | Place:  Courtroom 15, 18th Floor |

Honorable Marilyn Hall Patel

TO: THE CLERK OF THE COURT AND PLAINTIFF OM FINANCIAL SERVICES

COMPANY.  PLEASE TAKE NOTICE THAT on January 14, 2008, at 2:00 p.m., or as soon thereafter

as the matter may be heard in Courtroom 15, 18th Floor, of the above-captioned Court, defendant,

ROSA RIVERA KEEL, will request judicial notice of the matters set forth herein and attached hereto

as authenticated by her counsel as more specifically set forth below and in the separate declaration of

defendant ROSA RIVERA KEEL filed concurrently herewith pursuant to Rule 201 of the Federal Rules

of Evidence.

DATED: December 3, 2007          /s/ signature on file
                                 Frank S. Moore
                                 Attorney for defendant Rosa Rivera Keel

**DECLARATION OF COUNSEL**

I, FRANK S. MOORE, hereby declare:

1.     I am counsel for the defendant, Rosa Rivera Keel, named in this action.  I have personal knowledge of the matters stated herein.  If called as a witness, I could testify truthfully to the matters stated herein.  I make this declaration in support of defendant's Special Motion to Strike Plaintiff's Complaint Pursuant to California's Anti-SLAPP Statute.

2.     A true and correct copy of the complaint filed by the plaintiff OM FINANCIAL SERVICES COMPANY is attached hereto as Exhibit "A."

3.     A true and correct copy of the October 26, 2007 letter sent to my client, defendant Rosa Rivera Keel, from plaintiff's counsel, Henry Wang, is attached hereto as Exhibit "B."

4.     I was counsel for record of Rosa Rivera Keel in the matter she filed a lawsuit in last year against Patrice Ann Pfitzer and Family Direct Insurance Services, Inc., in San Francisco County Superior Court, Case No. CGC 06-457269.  A true and correct copy of the complaint I prepared on Ms. Keel's behalf is attached hereto as Exhibit "C."

5.     A true and correct copy of the voluntary dismissal, without prejudice, of the complaint in Case No. CGC 06-457269, Ms. Keel authorized me to file is attached hereto as Exhibit "D."

6.     A true and correct copy of the consumer complaint Ms. Keel initiated with the California Department of Insurance on May 20, 2007 is attached hereto as Exhibit "E."

7.     True and correct copies of correspondence dated June 11, 2007, and September 27, 2007, sent by Elizabeth Saentz, Senior Insurance Compliance Officer with the Department of Insurance, which Ms. Keel received in response to the consumer complaint she initiated with the California Department of Insurance are attached hereto as Exhibit "F."

I declare under penalty of perjury that the foregoing is true and correct of my own personal knowledge.  Executed at San Francisco, California on December 3, 2007.

/s/ signature on file
Frank S. Moore

**REQUEST FOR JUDICIAL NOTICE**

Defendant hereby requests judicial notice be taken of the following items which are not subject to reasonable dispute in that they are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned:

1.      This Court's record of the complaint and the allegations made therein (though not the truth of the allegations contained therein) filed by the plaintiff against the defendant (Exhibit "A") pursuant to FRE 201(d); and see <u>Mullis v. United States Bank. Ct.</u>, 828 F2d 1385, 1388, fn. 9 (9th Cir. 1987);

2.      The assertion contained in plaintiff's counsel's October 26, 2007 letter sent to defendant Rosa Rivera Keel of the reason for filing the complaint in this action pursuant to FRE 201(d);

3.      The records of the San Francisco Superior Court in Case No. CGC 06-457269 (Exhibits "C" and "D") pursuant to  FRE 201(d) reflecting petitioning conduct by Rosa Rivera Keel; and see <u>Mullis v. United States Bank. Ct.</u>, 828 F2d 1385, 1388, fn. 9 (9th Cir. 1987);

4.      The public documents of Rosa Rivera Keel's consumer complaint filed with the California Department of Insurance (Exhibit "E") reflecting petitioning conduct by Rosa Rivera Keel and to determine what statements the document contains pursuant to  FRE 201(d); see also <u>In re Silicon Graphics Inc. Secur. Litig.</u>, 183 F.3d 970, 986 (9th Cir. 1999); <u>Bryant v. Avado Brands, Inc.</u>, 187 F.3d 1271, 1278 (11th Cir. 1999); <u>Lovelace v. Software Spectrum, Inc.</u>, 78 F.3d 1015, 1017–1018 (5th Cir. 1996).

5.      The public documents of the Department of Insurance in the form of correspondence dated June 11, 2007, and September 27, 2007, sent by Elizabeth Saentz, Senior Insurance Compliance Officer, received by Rosa Rivera Keel received in response to the consumer complaint she initiated with the California Department of Insurance reflecting that an investigation is ongoing  and to determine what statements the documents contain pursuant to  FRE 201(d).

Dated: December 3, 2007                    Respectfully submitted,


                                                    /s/ signature on file
                                                    Frank S. Moore
                                                    Attorney for defendant Rosa Rivera Keel

# Exhibit A

MANATT, PHELPS & PHILLIPS, LLP
HENRY C. WANG (Bar No. CA 196537)
hwang@manatt.com
CHARLES G. GOMEZ (Bar No. CA 236663)
cgomez@manatt.com
11355 West Olympic Boulevard
Los Angeles, CA 90064-1614
Telephone: (310) 312-4000
Facsimile: (310) 312-4224

*Attorneys for Plaintiff*
OM FINANCIAL LIFE INSURANCE
COMPANY, formerly known as Fidelity and
Guaranty Life Insurance Company

ORIGINAL
FILED

07 SEP 13 PH 3:25

RICHARD W. WIEKING
U.S. CLERK
U.S. DISTRICT COURT
NO. DISTRICT [ ... ]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**MHP**

**C07   04723**

OM FINANCIAL LIFE INSURANCE
COMPANY,

        Plaintiff,

    vs.

ROSA RIVERA KEEL, and DOES 1
through 10, inclusive

        Defendants.

Case No.

COMPLAINT FOR DECLARATORY
RELIEF (28 U.S.C. §§ 2201, 2202)

Plaintiff OM Financial Life Insurance Company ("OM Life"),

formerly known as Fidelity and Guaranty Life Insurance Company, files this

Complaint against Defendant Rosa Rivera Keel ("Defendant") and alleges as

follows:

## SUMMARY OF ACTION

1.    OM Life is a company authorized to do business in California

and is licensed to sell, among other things, life insurance in California. Defendant

is the beneficiary of a life insurance policy issued by Plaintiff to Sean Kenneth

Keel. OM Life subsequently cancelled the subject life insurance policy when Mr.

COMPLAINT FOR DECLARATORY RELIEF

1  Keel failed to make the requisite premium payment on the policy. OM Life seeks a

2  declaratory judgment that its cancellation of the policy was proper and did not

3  violate Defendant's rights in any manner.

4  **JURISDICTION AND VENUE**

5  2.    This Court has subject matter jurisdiction over the claims in this

6  action pursuant to 28 U.S.C. § 1332 in that there is a complete diversity of the

7  parties and the amount in dispute exceeds $75,000. Venue is proper in this district

8  under 28 U.S.C. § 1391(a) in that, *inter alia*, Defendant is located in and/or do

9  business in this district, and a substantial portion of the events described in this

10  complaint took place in this district.

11  **INTRADISTRICT ASSIGNMENT**

12  3.    Pursuant to Local Civil Rule 3-2, the San Francisco Division of

13  this Court is the proper venue because a substantial part of the events or omissions

14  which give rise to the claim occurred in the County of San Francisco.

15  **PARTIES**

16  4.    At all relevant times, OM Life was and is a corporation

17  organized and existing under the laws of the State of Maryland, with its principal

18  place of business in the State of Maryland, and is authorized to transact and is

19  transacting business in the State of California.

20  5.    OM Life is informed and believes, and on that basis alleges, that

21  Defendant was and is a resident of the City and County of San Francisco, State of

22  California.

23  6.    The true names and capacities of defendants DOES 1 through

24  10, inclusive, whether individual, corporate or otherwise, are unknown to OM Life

25  at this time, who therefore sues these defendants by such fictitious names. When

26  the true names and capacities of the fictitiously named defendants are ascertained,

27  OM Life will amend the Complaint to reflect their true names.

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT FOR DECLARATORY RELIEF

1

## FIRST CAUSE OF ACTION

2

### (Declaratory Relief)

3    7.    Plaintiff incorporates in full the allegations in paragraphs 1

4    through 6, as though fully set forth herein.

5    8.    On or about August 27, 2005, Mr. Keel executed and submitted

6    a written application for a $620,000 life insurance policy with an Accelerated Death

7    Benefit rider and a Return of Premium rider.    Mr. Keel elected to the option to

8    make quarterly premium payments for the policy, and designated the Defendant as

9    the primary beneficiary.

10    9.    On October 10, 2005, OM Life issued Life Insurance Policy

11    L0531119 (the "Policy").

12    10.    The Policy contains, among other things, a premium payment

13    grace period provision, which provides:

14    **Certificate Date**

15    The date on which the initial premium is due and on which coverage

16    starts.  Premium due dates, certificate months, years, and anniversaries

17    are measured from this date.

18    ****

19    **Premium Payments**

20    All premium payments:

21    • Must be paid on or before their due date.

22    • Must be made at our Home Office or any administrative

23    office that we maintain.

24    • Must be in the currency of the United State of America.

25    • May be made by a currently dated check or money order

26    made payable to Fidelity and Guaranty Life Insurance

27    Company.

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1               Before any insurance becomes effective, the first premium for

2               each term must be paid while the Insured is alive.

3          11.    Mr. Keel did not pay the initial quarterly premium in the amount

4    of $378.30 when the Policy was issued.

5          12.    In the Delivery Requirement Notice dated October 12, 2005,

6    Mr. Keel was advised that he was required to make the initial premium payment in

7    the amount of $378.30 within 30 days in order to activate the Policy.

8          13.    On November 3, 2005, OM Life sent Mr. Keel an Intent to

9    Close Notification, informing Mr. Keel that the Policy would be cancelled if the

10   initial quarterly premium was not received within 15 days of the date of the Intent

11   to Close Notification.

12         14.    Mr. Keel did not pay the initial quarterly premium within 15

13   days of the date of the Intent to Close Notification.

14         15.    On December 19, 2005, OM Life notified Mr. Keel that the

15   Policy was cancelled.

16         16.    On or about January 21, 2006, Mr. Keel died.

17         17.    On January 23, 2006, Defendant called OM Life and the status

18   of the Policy was discussed with her.

19         18.    On or about January 26, 2006, OM Life received a check in the

20   amount of $378.30, which was purportedly sent to OM Life by Mr. Keel as his

21   initial quarterly premium payment on the Policy.

22         19.    On January 27, 2006, OM Life sent Mr. Keel a letter advising

23   him that the Policy had been cancelled and that the $378.30 would be returned to

24   him under separate cover.

25         20.    In a letter dated February 9, 2006, Defendant informed OM Life,

26   and OM Life learned for the first time, of Mr. Keel's death. Defendant requested

27   the forms necessary to open a death benefit claim.

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT FOR DECLARATORY RELIEF

1    21.    An actual controversy exists between the parties hereto

2  concerning the rights, duties and liabilities of the parties with regard to the Policy.

3  OM Life contends that because the initial premium payment on the Policy was not

4  paid within the requisite time, the Policy was not in force at the time of Mr. Keel's

5  death, and that OM Life was entitled to cancel the Policy on December 19, 2005.

6    22.    OM Life is informed and believes, and on that basis alleges, that

7  Defendant contends that the initial premium payment on the Policy was made prior

8  to the death of Mr. Keel and that she is therefore entitled to receive the benefits

9  under the Policy.

10    23.    A determination of the following issues is essential to the

11  determination of liability in this action:

12          (a)    Whether the requisite premium was paid timely in

13                  accordance with the terms of the Policy and the subsequent

14                  notices;

15          (b)    Whether OM Life was entitled to cancel the Policy; and

16          (c)    Whether the Policy was in force at the time of Mr. Keel's

17                  death.

18    24.    It is necessary for the Court to determine and declare the rights,

19  duties and liabilities of the parties with regard to their respective rights, duties and

20  obligations under the Policy.  OM Life seeks a determination that Defendant is not

21  entitled to the benefits under the Policy because the initial premium payment was

22  not made within the requisite time period, as required under the terms of the Policy

23  and the subsequent notices.

24  / / /

25  / / /

26  / / /

27  / / /

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT FOR DECLARATORY RELIEF

1

## PRAYER FOR RELIEF

2    WHEREFORE, OM Life prays for judgment against Defendant as

3 follows:

4    1.    That the Court declare that Defendant is not entitled to benefits

5 under the Policy;

6    2.    That OM Life properly cancelled the Policy; and

7    3.    For an order that this action was brought by OM Life in good

8 faith.

9

10 Dated:  September 11, 2007        MANATT, PHELPS & PHILLIPS, LLP
                                    HENRY C. WANG
11                                  CHARLES G. GOMEZ

12

13    By: _____
                Henry C. Wang
14              *Attorneys for Plaintiff*
                OLD MUTUAL FINANCIAL LIFE
15              INSURANCE COMPANY, formerly
                known as Fidelity and Guaranty Life
16              Insurance Company

17

18 41144662.3

19

20

21

22

23

24

25

26

27

28

Exhibit B

# manatt

manatt | phelps | phillips

Henry C. Wang
Manatt, Phelps & Phillips, LLP
Direct Dial: (310) 312-4143
E-mail: hwang@manatt.com

October 26, 2007

Client-Matter: 22195-095

**HAND DELIVERED**

Rosa Rivera-Keel
291 Guerrero Street
San Francisco, CA 94103

Re:     *OM Financial Life Ins. Co. v. Rosa Rivera Keel*
        **(USDC-NDCA Case No. C0704723 MHP)**
        **Policy No. L0531119**

Dear Ms. Rivera-Keel:

    I am writing this letter to advise you that OM Financial Life Insurance Company, formerly known as Fidelity and Guaranty Life Insurance Company ("OM Life") has retained this law firm in connection with Policy No. L0531119 (the "Policy") that was issued to your late husband Sean Keel. This letter will also inform you of the steps that OM Life has taken recently to ensure that your claim for benefits under the Policy is being fairly considered. We have compiled and reviewed the available documentation regarding the circumstances surrounding your claim for benefits under the Policy. Below is a brief summary of the relevant facts and records:

    On or about August 27, 2005, Mr. Keel executed and submitted a written application for a $620,000 life insurance policy with an Accelerated Death Benefit rider and a Return of Premium rider. Mr. Keel elected the option to make quarterly premium payments for the policy.

    On October 10, 2005, OM Life issued the Policy, which contains, among other things, a premium payment grace period provision, which provides:

**Certificate Date**

The date on which the initial premium is due and on which coverage starts. Premium due dates, certificate months, years, and anniversaries are measured from this date.

                                ****

**Premium Payments**

All premium payments:

- Must be paid on or before their due date.

11355 West Olympic Boulevard, Los Angeles, California 90064-1614  Telephone: 310.312.4000  Fax: 310.312.4224
Albany | Los Angeles | New York | Orange County | Palo Alto | Sacramento | San Francisco | Washington, D.C.



**manatt**
manatt | phelps | phillips

Rosa Rivera Keel
October 26, 2007
Page 2

- Must be made at our Home Office or any administrative office that we maintain.

- Must be in the currency of the United State of America.

- May be made by a currently dated check or money order made payable to Fidelity and Guaranty Life Insurance Company.

Before any insurance becomes effective, the first premium for each term must be paid while the Insured is alive.

Because Mr. Keel did not pay the initial quarterly premium, OM Life advised Mr. Keel that he was required to make the initial quarterly premium payment in the amount of $378.30 within 30 days of October 12, 2005 in order to activate the Policy. This request was forwarded to Mr. Keel along with the Policy on or about October 19, 2005 by his insurance broker Family Direct Insurance Services, Inc.

On November 3, 2005, OM Life sent another reminder to Mr. Keel to pay the quarterly premium. Specifically, it sent an Intent to Close Notification, informing Mr. Keel that the Policy would be cancelled if the initial quarterly premium was not received within 15 days of the date of the Intent to Close Notification.

According to OM Life's records, Mr. Keel did not pay the initial quarterly premium within 15 days of the date of the Intent to Close Notification. As a result, on December 19, 2005, more than two months after the Policy was issued, OM Life notified Mr. Keel that the Policy was cancelled.

On or about January 21, 2006, Mr. Keel died.

On or about January 26, 2006, OM Life received a check in the amount of $378.30, which purportedly represented the initial premium payment for the Policy. However, because this payment was received after the Policy had been cancelled, it was not adequate to activate or to reinstate the Policy. Accordingly, on January 27, 2006, OM Life sent Mr. Keel a letter advising him that the Policy had been cancelled and that the $378.30 would be returned to him under separate cover.

Subsequently, you contacted the California Department of Insurance ("DOI") regarding this matter. On or about June 11, 2007, the DOI inquired into this matter and demanded, among other things, that OM Life provide a narrative explanation of your claim history. OM Life provided a thorough explanation to the DOI, and stood by its decision.



**manatt**
manatt | phelps | phillips

Rosa Rivera Keel
October 26, 2007
Page 3

To date, OM Life continues to stand by its decision and is not waiving any of its rights. Nevertheless, in an effort to give at least as much consideration to your interests as it gives to its own interests, OM Life has decided to defer this matter to an impartial tribunal. To that end, OM Life has filed a declaratory relief action in the United States District Court for the Northern District of California entitled *OM Financial Life Insurance Company v. Rosa Rivera Keel* - Case No. C07-04723 (MHP) (the "Action"). OM Life is not seeking damages or any form of monetary relief against you in the Action. Instead, it is requesting the Court to declare the parties' rights and obligations, if any, under the Policy. Enclosed with this letter are documents relating to the Action. They are: (1) Summons, (2) Complaint For Declaratory Relief, (3) Order Setting Initial Case Management Conference and ADR Deadlines, (4) Standing Order for All Judges of the Northern District of California, and (5) Standing Orders of Chief Judge Marilyn Hall Patel.

In summary, the filing of the Action reflects OM Life's good faith effort to have an impartial tribunal review this matter. While the Action does not seek any damages against you, we recommend that you obtain legal representation. There are numerous documents to be filed and deadlines that must be met in the upcoming months. For instance, the enclosed Order Setting Initial Case Management Conference requires the parties to meet-and-confer on December 3, 2007 regarding the case and to file a Joint Case Management Statement on December 17, 2007.

If you have any questions, please call me at (310) 312-4143.

Sincerely,

Henry C. Wang

Enclosures

Exhibit C

ENDORSED
F I L E D
San Francisco County Superior Court

OCT 2 3 2006

GORDON PARK-LI, Clerk
BY: DEBORAH STEPPE
Deputy Clerk

1  FRANK S. MOORE, SBN 158029
   Law Offices of Frank S. Moore, APC
2  SUZY C. MOORE, SBN 151502
   Law Offices of Suzy C. Moore
3  1374 Pacific Avenue
   San Francisco, California 94109
4  Telephone:    (415) 292-6091     **CASE MANAGEMENT CONFERENCE SET**
   Facsimile:    (415) 292-6694
5
   Attorneys for Plaintiffs,
6  ROSA RIVERA KEEL                    MAR **2 3** 2007 - 9 ⁰⁰ AM
7
8                                      **DEPARTMENT 212**

9            SUPERIOR COURT FOR THE STATE OF CALIFORNIA

10           COUNTY OF SAN FRANCISCO - UNLIMITED JURISDICTION

11  ROSA RIVERA KEEL, individually and in her )    No. **C G C - 0 6 - 4 5 7 2 5 9**
    capacity as successor in interest to decedent )
12  SEAN KEEL,                               )    **VERIFIED COMPLAINT FOR DAMAGES**
                                             )
13         Plaintiffs,                       )    1.    **Negligence**
                                             )
14  vs.                                      )    2.    **Constructive Fraud**      BY FAX
                                             )
15  PATRICE ANN PFITZER, an individual,      )    3.    **Negligent Misrepresentation**
    FAMILY DIRECT INSURANCE SERVICES,        )
16  INC., a California Corporation, and DOES 1 )
    through 25,                              )
17                                           )             **JURY TRIAL DEMANDED**
18         Defendants.                       )
                                             )
19  _____ /

20         COMES NOW plaintiff ROSA RIVERA KEEL, individually and in her capacity as successor

21  in interest to decedent SEAN KEEL, who complains against defendants PATRICE ANN PFITZER, an

22  individual, FAMILY DIRECT INSURANCE SERVICES, INC., a California Corporation, and DOES

23  1 through 25, as follows:

24                              **THE PARTIES**

25         1.      Plaintiff ROSA RIVERA KEEL is a resident of the City and County of San Francisco,

26  State of California.  She was the lawfully wedded wife of decedent SEAN KEEL ("decedent"), the

27  customer and client of defendants PATRICE ANN PFITZER and FAMILY DIRECT INSURANCE

28  SERVICES, INC., and was the intended beneficiary to a policy of term life insurance negotiated and

---

*KEEL, v. PFITZER, et al.*
VERIFIED COMPLAINT FOR DAMAGES                                                          1

1    delivered to decedent by said defendants.  Plaintiff ROSA RIVERA KEEL is the successor in interest

2    to decedent as defined in Section 377.11 of the California Code of Civil Procedure and succeeds to the

3    decedent's interest in the action or proceeding and no other person has a superior right to commence the

4    action or proceeding or to be substituted for the decedent in the pending action or proceeding.

5          2.      Plaintiff is informed and believes and thereupon alleges that defendant PATRICE ANN

6    PFITZER is a resident of the County of Sacramento.  She is licensed by the State of California (License

7    #0E67175) as a life insurance agent and is therefore authorized by and on behalf of a life, disability, or

8    life and disability insurer to transact life, disability, or life and disability insurance.

9          3.      Plaintiff is informed and believes and thereupon alleges that defendant FAMILY

10    DIRECT INSURANCE SERVICES, INC., is a California Corporation with its principal place of doing

11    business at 870 Glenn Drive, Folsom, California, and is licensed by the State of California (License#

12    0B29335) as a life insurance agent and is therefore authorized by and on behalf of a life, disability, or

13    life and disability insurer to transact life, disability, or life and disability insurance.

14          4.      Plaintiff is ignorant of the true names and capacities of DOES 1 through 25 herein and

15    will pray for leave of Court to insert the true names and capacities of such defendants when they become

16    known or are ascertained together with appropriate charging allegations.

17          5.      Plaintiff is informed and believe and thereupon alleges that each of the defendants named

18    herein were the agents, employees, or representatives of each of the remaining defendants, and in doing

19    the things herein mentioned, were acting in the course and scope of such agencies and employment.

20          6.      San Francisco County is the proper venue for this action San Francisco County is the

21    county where the contract was entered into and/or where the transaction or any substantial portion

22    thereof was to be performed.

23          **STATEMENT OF FACTS**

24          7.      On or about August 27, 2005, decedent contracted with defendants PATRICE ANN

25    PFITZER and FAMILY DIRECT INSURANCE SERVICES, INC., to secure a life insurance policy

26    with  a death benefit coverage of $620,000 for his wife, plaintiff ROSA RIVERA KEEL.  Decedent

27    filled out an application for said policy and delivered it to defendants PATRICE ANN PFITZER and

28    FAMILY DIRECT INSURANCE SERVICES, INC.  A true and correct copy of said application for life

---

*KEEL, v. PFITZER, et al.*
VERIFIED COMPLAINT FOR DAMAGES       2

1    insurance is attached hereto and incorporated herewith as Exhibit "A."

2        8.    Sometime after August 27, 2005, but before September 10, 2005, defendant PATRICE

3    ANN PFITZER, on behalf of defendant FAMILY DIRECT INSURANCE SERVICES, INC., sent an

4    undated letter to decedent informing him that his application for life insurance had been received.  The

5    letter also informed decedent that the check for the initial premium was not included with the

6    application.  Defendant PATRICE ANN PFITZER, on behalf of defendant FAMILY DIRECT

7    INSURANCE SERVICES, INC., informed decedent that his application could not be processed until

8    his premium check was received.  A true and correct copy of said letter is attached hereto and

9    incorporated herewith as Exhibit "B."

10        9.    Defendant PATRICE ANN PFITZER's undated letter (Exhibit "B" hereto) provided

11    decedent two plans to select to effect payment.

12            a.    The first option, entitled "MONTHLY PAYMENT SYSTEM", instructed

13                decedent that he could:

14                i.    Sign a purportedly enclosed "authorization";

15                ii.    Write "VOID" on a check from his checking account and return it with

16                    his signed authorization; and

17                iii.    Write a check payable to "F&G 20/20 ROP" for $97.47, which would

18                    pay for the first month after the policy was issued and future payments

19                    would be drawn from his checking account; or

20            b.    The second option, entitled "OTHER PREMIUM MODES", instructed decedent

21                that he would be billed directly at his home on either:

22                i.    Quarterly at $281.58;

23                ii.    Semi-annually at $552.33; or

24                iii.    Annually at $1,083.00. (Exhibit "B.")

25        10.    Defendant PATRICE ANN PFITZER's undated letter (Exhibit "B" hereto) instructed

26    decedent that if he chose one of the payment modes, to enclose a check made payable to "F&G 20/20

27    ROP" for the amount representing the mode he chose.  The undated letter also states that all future

28    premium notices would be sent to decedent's home. (Exhibit "B.")

11.    Decedent chose the first option, "MONTHLY PAYMENT SYSTEM", as the mode for payment. On or about September 10, 2005, decedent sent a check dated September 10, 2005 (Check No. 93) to defendants PATRICE ANN PFITZER and FAMILY DIRECT INSURANCE SERVICES, INC., payable to "F&G 20/20 ROP" for $97.47.  Plaintiff is informed and believes and thereupon alleges that either decedent or an agent of defendant FAMILY DIRECT INSURANCE SERVICES, INC., wrote the word "VOID" over the check.  A true and correct copy of Check No. 93 is attached hereto and incorporated herewith as Exhibit "C."  Plaintiff is informed and believes and thereupon alleges that decedent sent no other check to defendant FAMILY DIRECT INSURANCE SERVICES, INC., than Check No. 93.

12.    On or about September 19, 2005, defendant PATRICE ANN PFITZER, on behalf of defendant FAMILY DIRECT INSURANCE SERVICES, INC., certified that she asked the questions contained in the application for the policy of life insurance (Exhibit "A") and duly recorded the answers. Defendant PATRICE ANN PFITZER, on behalf of defendant FAMILY DIRECT INSURANCE SERVICES, INC., also certified that, to the best of her knowledge, there was nothing affecting the insurability of any persons proposed for the insurance as stated in the application.  Defendant PATRICE ANN PFITZER, on behalf of defendant FAMILY DIRECT INSURANCE SERVICES, INC., also certified that, if the initial premium was paid with the application, she had remitted it to the insurer and delivered a Conditional Receipt to the Owner.  Defendant PATRICE ANN PFITZER, on behalf of defendant FAMILY DIRECT INSURANCE SERVICES, INC., also certified that, if Disclosure Statements were required by the state, she had given them to the applicant.  Finally, defendant PATRICE ANN PFITZER, on behalf of defendant FAMILY DIRECT INSURANCE SERVICES, INC., also certified that, she witnessed the signature of decedent on the application for the policy of insurance. These certifications appear in, and were made a part of, the bound policy delivered to decedent, Policy No. L0531119.  A true and correct copy of Policy No. L0531119 issued by Fidelity and Guaranty Life Insurance Company is attached hereto and incorporated herewith as Exhibit "E."

13.    On October 19, 2005, defendant PATRICE ANN PFITZER, on behalf of defendant FAMILY DIRECT INSURANCE SERVICES, INC., sent decedent a letter with the enclosed policy for life insurance (Policy No. L0531119).  The October 19, 2005 letter defendant PATRICE ANN PFITZER

sent to decedent states: "Please find your new policy attached.  This **sensible and economical** coverage can be used to **pay off your $620,000 mortgage if you die.**  It provides **quality protection** for your family – **affordability** and **peace of mind** for you." The October 19, 2005 letter defendant PATRICE ANN PFITZER sent to decedent also states:

> **"Please make a record of the following information:**
> **Your policy number is: L0531119**
> **Your policy date is 10/10/2005**
> **The coverage amount is: $620,000**
> **The current quarterly premium is $378.30**

A true and correct copy of the October 19, 2005 letter defendant PATRICE ANN PFITZER sent to decedent is attached hereto and incorporated herewith as Exhibit "D."

14.    Policy No. L0531119 (Exhibit "E" hereto) contained a certificate of life insurance from Fidelity and Guaranty Life Insurance Company that decedent had obtained a policy of life insurance as requested from defendants PATRICE ANN PFITZER and FAMILY DIRECT INSURANCE SERVICES, INC.

15.    Policy No. L0531119 (Exhibit "E" hereto) contained a page which stated: "Sean K. Keel (decedent), the following requirements must be met within 30 days to activate your policy.  If you have any questions feel free to call our Service Center at 1-888-513-8797.  Policy is being issued with a quarterly premium of $378.30.  Need initial premium in the amount of $378.30."  However, also bound within Policy No. L0531119 (Exhibit "E" hereto) was a copy of Check No. 93 made payable to "F&G 20/20 ROP" for $97.47 with the word "VOID" written across it (Exhibit "C" hereto) along with defendant PATRICE ANN PFITZER's certifications set forth in paragraph 12 herein.

16.    Plaintiff is informed and believes and thereupon alleges that decedent believed that he had bound the insurance coverage in Policy No. L0531119 by choosing the first option, "MONTHLY PAYMENT SYSTEM", outlined in defendants' undated letter (Exhibit "B" hereto).  Plaintiff is informed and believes and thereupon alleges that defendants PATRICE ANN PFITZER and FAMILY DIRECT INSURANCE SERVICES, INC., never informed decedent that the policy had not been bound over by sending Check No. 93 made payable to "F&G 20/20 ROP" for $97.47.  Neither defendants PATRICE ANN PFITZER nor FAMILY DIRECT INSURANCE SERVICES, INC., executed the "MONTHLY PAYMENT SYSTEM" selection outlined in defendants' undated letter (Exhibit "B"

1  hereto) or informed decedent that his choice of the "MONTHLY PAYMENT SYSTEM" was defective

2  in any way.

3        17.    Decedent was tragically killed on January 21, 2006.

4        18.    Shortly after learning of her husband's death, plaintiff ROSA RIVERA KEEL consulted

5  Policy No. L0531119 (Exhibit "E" hereto) and arranged to have a friend who worked for an insurance

6  company review it.  Plaintiff's friend informed her that it appeared that the policy was in effect because

7  an original policy had been delivered to decedent.  On January 22, 2006, plaintiff made payment of

8  $378.30 as the premium for Policy No. L0531119 (Exhibit "E" hereto).  A true and correct copy of the

9  bank transaction reflecting said payment is attached hereto as Exhibit "F."

10        19.    On or about January 25, 2006, plaintiff telephoned Fidelity and Guaranty Life Insurance

11  Company to inquire about the status of Policy No. L0531119.  In response to her inquiry, Fidelity and

12  Guaranty Life Insurance Company sent plaintiff a letter dated January 27, 2006, informing her that

13  Policy No. L0531119 had been closed as "incomplete due to outstanding requirements."  A true and

14  correct copy of Fidelity and Guaranty Life Insurance Company's January 27, 2006 letter is attached

15  hereto and incorporated herewith as Exhibit "G.

16        20.    On January 27, 2006, plaintiff ROSA RIVERA KEEL telephoned defendant PATRICE

17  ANN PFITZER to inquire about the status of Policy No. L0531119.  Defendant PATRICE ANN

18  PFITZER told plaintiff that the policy was in effect and that she had submitted all the necessary

19  paperwork to Fidelity and Guaranty Life Insurance Company and that there should not be a problem.

20  Plaintiff informed defendant PATRICE ANN PFITZER that Fidelity and Guaranty Life Insurance

21  Company had told her that there was no policy in effect.  Defendant PATRICE ANN PFITZER

22  informed plaintiff that she should telephone Fidelity and Guaranty Life Insurance Company back and

23  inform it that the policy had been delivered to her deceased husband.  Plaintiff informed defendant

24  PATRICE ANN PFITZER that Check No. 93 made payable to "F&G 20/20 ROP" for $97.47 was in

25  Policy No. L0531119.

26        21.    On February 7, 2006, Fidelity and Guaranty Life Insurance Company sent plaintiff a

27  check made out to "Sean K Keel" for $378.30 with the designation "Policy Suspense."  A true and

28  correct copy of said check is attached hereto as Exhibit "H."

22.    On February 10, 2006, plaintiff sent a letter dated February 9, 2006, via certified mail, to Fidelity and Guaranty Life Insurance Company informing it of her husband's death and that the death had occurred during the grace period of Policy No. L0531119 and requested that forms be sent to her to open a death benefit claim.  The letter was carbon copied to defendants PATRICE ANN PFITZER and FAMILY DIRECT INSURANCE SERVICES, INC.  A true and correct copy of plaintiff's February 9, 2006 letter is attached hereto and incorporated herewith as Exhibit "I."  Neither Fidelity and Guaranty Life Insurance Company or defendants PATRICE ANN PFITZER and FAMILY DIRECT INSURANCE SERVICES, INC., responded to plaintiff's February 9, 2006 letter.

**FIRST CAUSE OF ACTION**
**[Negligence]**

23.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

24.    Decedent contracted with defendants PATRICE ANN PFITZER and FAMILY DIRECT INSURANCE SERVICES, INC., to secure a life insurance policy with a death benefit coverage of $620,000 for his wife, plaintiff ROSA RIVERA KEEL, the intended beneficiary.  This contract as alleged herein, like every contract entered into in California, imposed duties on the defendants, and each of them, to perform said contract with care, skill, reasonable expedience, and faithfulness the things agreed to be done.  By entering into the aforementioned contract, defendants PATRICE ANN PFITZER and FAMILY DIRECT INSURANCE SERVICES, INC., undertook professional and business engagements that required them to exercise care, skill and knowledge as implied in such agreements in favor of its client, the decedent, and on behalf of the intended beneficiary, plaintiff ROSA RIVERA KEEL.

25.    In addition, defendants PATRICE ANN PFITZER and FAMILY DIRECT INSURANCE SERVICES, INC., as insurance agents, had the duty to exercise good faith, use reasonable care, diligence, and judgment in procuring the insurance requested by its client, the decedent, on behalf of the intended beneficiary, plaintiff ROSA RIVERA KEEL.

26.    The acts and/or omissions alleged herein breached these duties.  Plaintiff suffered damages as a consequence, namely, the loss of the death benefit her husband sought for her benefit in the event of his death, the loss of economic well-being the death benefit was designed to accomplish

1    and the mental anguish associated therewith.  It was reasonably foreseeable that had defendants, and

2    each of them, failed to uphold their duties, decedent and his beneficiary, the plaintiff, would be harmed.

3         27.    The acts and omissions of defendants alleged above demonstrated a wanton and reckless

4    conscious disregard for the rights and well-being of the interests of the plaintiff, entitling her to penalties

5    or punitive or exemplary damages based on the actual harm suffered by her.

6         WHEREFORE, plaintiff prays for relief as hereinafter provided.

7                    **SECOND CAUSE OF ACTION**
                     **[Constructive Fraud]**

8         28.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

9         29.    Decedent reposed his utmost trust and confidence in defendants as insurance agents to

10   help him bind and secure life insurance for his spouse in the event of his death.  Defendants PATRICE

11   ANN PFITZER and FAMILY DIRECT INSURANCE SERVICES, INC., knew, or had a duty to know,

12   that decedent desired to obtain a life insurance policy wherein his wife would be the direct beneficiary

13   of such policy in the event he died.

14        30.    Defendants PATRICE ANN PFITZER and FAMILY DIRECT INSURANCE

15   SERVICES, INC., knew, or had a duty to know, that decedent had exercised the option to pay the

16   premiums for the purchase of Policy No. L0531119 through the "MONTHLY PAYMENT SYSTEM"

17   option outlined in defendants' undated letter (Exhibit "B" hereto).  Defendants PATRICE ANN

18   PFITZER and FAMILY DIRECT INSURANCE SERVICES, INC., also knew, or had a duty to know,

19   that decedent would reasonably have relied upon the October 19, 2005 letter sent by them (Exhibit "D"

20   hereto) informing him that the life insurance policy had been purchased, the delivery of Policy No.

21   L0531119 to the decedent reinforcing that view and the failure to notify decedent that he had not

22   effectively exercised the option to pay the premiums for the purchase of Policy No. L0531119 through

23   the "MONTHLY PAYMENT SYSTEM" option. Defendants PATRICE ANN PFITZER and FAMILY

24   DIRECT INSURANCE SERVICES, INC., knew, or had a duty to know, that decedent's reliance on

25   correspondence from them and the delivery of Policy No. L0531119 to him would induce him to believe

26   that he had bound insurance as contracted with them.

27

28

31.     Defendants PATRICE ANN PFITZER and FAMILY DIRECT INSURANCE SERVICES, INC., intended to induce action by the decedent to arrange for the life insurance policy he contracted with them to obtain and decedent was so induced.  Decedent also did not have reason to believe that he had not bound the life insurance policy based upon the representations made to him by the defendants.

32.     The acts and/or omissions alleged herein breached the aforementioned duties.  Plaintiff suffered damages as a consequence, namely, the loss of the death benefit her husband sought for her benefit in the event of his death, the loss of economic well-being the death benefit was designed to accomplish  and the mental anguish associated therewith.  It was reasonably foreseeable that had defendants, and each of them, failed to uphold their duties, decedent and his beneficiary, the plaintiff, would be harmed.

33.     The acts and omissions of defendants alleged above demonstrated a wanton and reckless conscious disregard for the rights and well-being of the interests of the plaintiff, entitling her to penalties or punitive or exemplary damages based on the actual harm suffered by her.

WHEREFORE, plaintiff prays for relief as hereinafter provided.

### THIRD CAUSE OF ACTION
### [Negligent Misrepresentation]

34.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

35.     Defendants PATRICE ANN PFITZER and FAMILY DIRECT INSURANCE SERVICES, INC., as insurance agents, had the duty to disclose to its client, the decedent, that he was under a mistake as to facts basic to the transaction, namely, that his attempt to exercise the option to pay the premiums for the purchase of  Policy No. L0531119 through the "MONTHLY PAYMENT SYSTEM" option was insufficient.  Because of the customs of the trade of insurance agents and/or the other objective circumstances of the transaction as alleged herein, decedent, or any other reasonable person who had engaged in such a transaction, would reasonably expect disclosure of those facts.

36.     The acts and/or omissions alleged herein breached these duties.  Plaintiff suffered damages as a consequence, namely, the loss of the death benefit her husband sought for her benefit in the event of his death, the loss of economic well-being the death benefit was designed to accomplish

1    and the mental anguish associated therewith.  It was reasonably foreseeable that had defendants, and

2    each of them, failed to uphold their duties, decedent and his beneficiary, the plaintiff, would be

3    harmed.

4        37.      The acts and omissions of defendants alleged above demonstrated a wanton and

5    reckless conscious disregard for the rights and well-being of the interests of the plaintiff, entitling her

6    to penalties or punitive or exemplary damages based on the actual harm suffered by her.

7        WHEREFORE, plaintiff prays for relief as hereinafter provided.

8                                      **PRAYER**

9        WHEREFORE, defendant as follows:

10       1.      That plaintiff be awarded general, special and consequential damages, including

11   emotional distress, as compensatory damages in an amount in excess of the jurisdictional limit and

12   according to proof;

13       2.      That cross-complainant be awarded punitive damages in an amount sufficient to

14   punish and deter defendants;

15       3.      For interest on all damages;

16       4.      For such other and further relief as the Court deems just and proper.

17

18   Dated: October 23, 2006                    Respectfully submitted,

19
                                                Law Offices of Frank S. Moore, APC
20

21

22

23                                              Frank S. Moore
                                                Attorney for plaintiff ROSA RIVERA KEEL
24

25

26

27

28

1

## **VERIFICATION**

2      I, ROSA RIVERA KEEL, am a party to this action. I have read the foregoing VERIFIED

3 COMPLAINT FOR DAMAGES and know its contents. The matters stated in the VERIFIED

4 COMPLAINT FOR DAMAGES are true based on my own knowledge, except as to those matters

5 stated on information and belief, and as to those matters I believe them to be true.

6

7      I declare under penalty of perjury under the laws of the State of California that the foregoing

8 is true and correct.

9

10      Executed on October 18, 2006, at San Francisco, California.

11

12

13

14

15

16      Rosa Rivera Keel

      ROSA RIVERA KEEL

17

18

19

20

21

22

23

24

25

26

27

28

1

## JURY DEMAND

2        Plaintiff demands a jury trial for all matters that may be submitted to a jury.

3

4    DATED: October 23, 2006                    Law Offices of Frank S. Moore, APC

5

6

7

8                                              Frank S. Moore
                                               Attorney for Plaintiff
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit A

# Paramedical Supplement to Application

| Insurer | |
|---|---|
| ☒ Fidelity and Guaranty Life Insurance Company | ○ Americom Life and Annuity Insurance Company |

**Insured**

| First Name | Middle Initial | Last Name |
|---|---|---|
| Sean | R | Keal |

| Birth Date | Birth Place |
|---|---|
| 06 - 14 - 71 | CA |

## Medical History Questions

| | | |
|---|---|---|
| 1. | Have you ever been treated for or diagnosed with: | |
| a) | Any heart disease, heart attack, chest pain, high blood pressure, high cholesterol, murmur, palpitations, or any other disorder of the heart or blood vessels? | ○ Y  ☒ N |
| b) | Any circulatory disease, stroke, TIA, aneurysm, or any other disorder of the veins or arteries? | ○ Y  ☒ N |
| c) | Any breathing or lung disorder, COPD, asthma, bronchitis, sleep apnea, or emphysema? | ○ Y  ☒ N |
| d) | Diabetes, disorder of the immune system, blood disorder, or disorder of the glands? | ○ Y  ☒ N |
| e) | Cancer, tumor, or cysts? | ○ Y  ☒ N |
| f) | Depression, anxiety, dementia, Alzheimer's, or any other mental or nervous disease or disorder? | ○ Y  ☒ N |
| g) | Hepatitis, gastritis, colitis, or any disease or disorder of the liver, stomach, pancreas, or intestines? | ○ Y  ☒ N |
| h) | Any disease or disorder of the kidneys, bladder, prostate, urinary, or reproductive systems? | ○ Y  ☒ N |
| i) | Arthritis or any disease or disorder of the muscles (to include strains or sprains), tendons, bones, spine, back, or joints? | ○ Y  ☒ N |
| j) | Any disease or disorder of the skin, eyes, or ears? | ○ Y  ☒ N |
| k) | Acquired Immune Deficiency Syndrome (AIDS), AIDS related Complex (ARC) or positive test results indicating the presence of the AIDS virus? | ○ Y  ○ N |
| 2. | Are you currently prescribed any medication? | ○ Y  ○ N |
| 3. | Have you been prescribed medication in the past 5 years not previously mentioned? | ○ Y  ☒ N |
| 4. | In the past 10 years, have you: | |
| a) | Been hospitalized or had surgery? | ○ Y  ☒ N |
| b) | Had any electrocardiograms, x-rays, laboratory tests, treatment, or surgery, or been advised to and not done so? | ○ Y  ○ N |
| c) | Been recommended to have any test, treatment, or surgery, which has not been performed? | ○ Y  ○ N |
| d) | Had any illness, disease, or injury that is not included in other answers? | ○ Y  ○ N |
| 5. | Has any parent, brother, or sister died from or had any occurrence of cancer, heart disease, diabetes, or any hereditary disease prior to age 60? | ○ Y  ○ N |
| 6. | Have you smoked cigarettes, pipes, or cigars, used snuff, chewed tobacco, or used any nicotine-based products such as the patch, or gum? If yes, please detail the type(s) of tobacco product used and date of last use below. | ○ Y  ☒ N |
| 7. | In the past 10 years, have you sought or received treatment, advice, or counseling for the use of alcohol? | ○ Y  ☒ N |
| 8. | Have you ever sought or received treatment, advice, or counseling for the use of any narcotic, barbiturate, stimulant, amphetamine, hallucinogenic, street, or prescription drugs? Have you ever been arrested for the use or possession of such drug or are you currently using these drugs? | ○ Y  ☒ N |
| 9. | Within the past 10 years, have you made a claim or received benefits for disability or worker's compensation as a result of a sickness or injury? | ○ Y  ○ N |

CONTINUED

## Paramedical Supplement to Application - Continued

10. Personal Physician's Name and Address: _Judith Walsh_        _2355 Sutter_
_San Francisco, CA  94115_

Date and Reason Last Consulted: _about  1 yr ago - Routine_
_Check up        - well_

What treatment was given or medication prescribed? _None_

11. Give details of "Yes" answers. State question number and include where appropriate: diagnosis, date, duration, names
and addresses of all attending physicians and medical facilities:

I have read the questions and answered on this Paramedical Supplement to Application. The statements made herein are
complete, true and correctly recorded.

I agree that a copy of this Paramedical Supplement to Application will form a part of any policy or certificate issued, and
that no agent or medical examiner can pass upon insurability or modify any policy or certificate issued by the Company.

_San Francisco, CA_        _5-27-05_
Signed at (City and State) on (Date)

_(Ileana    Gutiérrez)_

Witness (Medical Examiner)
_R. Sen Len_
Signature of Proposed Insured age 15 or more; otherwise Parent or Legal Guardian of Proposed Insured

Fidelity and Guaranty Life Insurance Company, Baltimore MD    American Life and Annuity Insurance Company, Houston TX
ADMIN 2440 (05-2003)

# Life Insurance Application (page 1 of 8)

FAMILY DIRECT
INSURANCE SERVICES

## INSURER

● Fidelity & Guaranty Life Insurance Company          ○ Americom Life & Annu          L0531119

## PRIMARY INSURED

Name (First, M.I., Last)
**Sean K. Keel**

Home Address
**1450 Oakdale Avenue   San Francisco, CA 94124**

| Social Security No. | Sex | Marital Status | Date of Birth | Place of Birth | Height (ft., in.) | Weight (lbs.) |
|---|---|---|---|---|---|---|
| **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** | **M** | **Married** | **06-14-71** | **CA** | **5' 10"** | **200** |

| Currently Employed? | Occupation and Duties | Place of Employment | Years w/ Current Employer |
|---|---|---|---|
| ● Yes  ○ No | **Construction** | **Pacific Erectors** | **5** |

| Earned Annual Income (from last year's W-2) | Drivers License Number and Issue State | |
|---|---|---|
| **60000** | **A6215539** | **CA** |

| Daytime Phone | Evening Phone | Best Time to Call | Email Address |
|---|---|---|---|
| **415   671-0162** | **415   368-8034** | **2:00 pm** | |

## OTHER INSURED

Name (First, M.I., Last)                                        Relationship to Primary Insured

Home Address

| Social Security No. | Sex | Marital Status | Date of Birth | Place of Birth | Height (ft., in.) | Weight (lbs.) |
|---|---|---|---|---|---|---|
| | | | | | | |

| Currently Employed? | Occupation and Duties | Place of Employment | Years w/ Current Employer |
|---|---|---|---|
| ○ Yes  ○ No | | | |

Earned Annual Income (from last year's W-2)          Drivers License Number and Issue State

| Daytime Phone | Evening Phone | Best Time to Call | Email Address |
|---|---|---|---|
| | | | |

## OWNER(S)

*(UNLESS OTHERWISE NOTED, THE OWNER WILL BE THE PRIMARY INSURED.)*

Name (First, M.I., Last)                                        Relationship to Primary Insured

Home Address

Home Phone                                        Email Address

Birth Date                        Social Security No. or Tax I.D. No.

## BENEFICIARY DESIGNATION - Primary Insured Coverage

*FOR EACH BENEFICIARY, LIST FULL NAME, RELATIONSHIP TO PRIMARY INSURED AND % SHARE.*

| Primary Beneficiary(ies) | % | Contingent Beneficiary(ies) | % |
|---|---|---|---|
| **Rosa Rivera-Keel, Spouse** | | **All surviving children of Insured equal shares** | |

## BENEFICIARY DESIGNATION - Other Insured Coverage

*Unless otherwise noted in the Additional Information section, the beneficiary of other persons proposed for coverage will be the Primary Insured.*

FIDELITY & GUARANTY LIFE INSURANCE COMPANY, Baltimore, Maryland ● AMERICOM LIFE & ANNUITY INSURANCE COMPANY, Houston, Texas

ADMIN 4952 (04-2003)  FDIS Reg# 05-898-04847

# Life Insurance Application (page 2 of 8)

## POLICY/CERTIFICATE INFORMATION

| | | | |
|---|---|---|---|
| Product Name:<br>**Sav Select Term 20/20 ROP** | Amount of Insurance<br>$ **620,000** | Initial Premium<br>$ | ● Nontobacco<br>○ Tobacco |
| TERM:  ● Level  ○ Decreasing | Term Period (Number of Years)<br>**20** | Premium Guarantee Period<br>**20** | |
| UNIVERSAL LIFE:  ○ Level  ○ Increasing | Planned Premium<br>$ | Initial Allocation Percentage (for equity-indexed UL products only)<br>Equity Indexed Interest Option _____% Fixed Interest Option _____% | |

Mode of Payment (For bank draft, complete Bank Draft Plan authorization, and initial payment required.)

○ Annual
○ Semi-Annual
Credit Card   (See Instructions Page for current company practice)
○ Visa   ○ Mastercard

✗ Quarterly
○ Monthly Bank Draft
Account Number

○ Bi-Weekly Bank Draft
○ Other _____
Expiration Date

Payment in Exchange for Conditional Receipt
$
Signature to Authorize Credit Card Charge

*(No coverage will be effective except in accordance with the terms of the Receipt and unless full initial modal premium payment is submitted.)*

## ADDITIONAL BENEFITS - Primary Insured
*(Not all riders are available with all products or in all states)*

○ Accelerated Benefit Rider

○ Accidental Death Benefit Rider          Amount: $ _____

○ Critical Illness Rider          Amount: $ _____          *Supplemental questionnaire required.*

○ Disability Income Rider
Class: _____
Monthly Payout: $ _____
○ 3 month elimination, 2 year benefit
○ 6 month elimination, 5 year benefit

● Return of Premium Rider

○ Ultimate Income Option Rider
Initial Lump Sum: $ _____          *Illustration required.*
Monthly Income of: $ _____
for _____ years.
Final Lump Sum: $ _____

○ Waiver of Monthly Deduction Rider
(UL only)

○ Waiver of Premium Rider
(Term only)

○ Child Rider          Amount: $ _____          *Supplemental questionnaire required.*

○ Other: _____

# Life Insurance Application (page 3 of 8)

## OTHER INSURED BENEFITS
(Not all riders are available with all products or in all states)

○ Other Insured/Dependent Rider    Amount: $ _____    *For term products, term period must*
                                       Term Period: _____yrs.    *match base policy term period.*

○ Disability Income Rider    Class: _____
                              Monthly Payout: $ _____
                              ○ 3 month elimination, 2 year benefit
                              ○ 6 month elimination, 5 year benefit

○ Other: _____

## EXISTING INSURANCE
List existing, personal and business life insurance, disability income, annuity, and long term care coverage. Write NONE if there is no coverage.

| Insurance Company | Policy Type | Policy # | Life Insurance or Disability Income Amount | ADB Amount | Year Issued |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

|  | Primary Insured | Other Insured |
|---|---|---|
| 1. Will this policy/certificate, if issued, replace, or change any existing life insurance or annuity? If "Yes", circle which policy/certificate(s) listed above are to be replaced or changed. Amount being replaced $_____ | ○ Y ● N | ○ Y ○ N |
| 2. Is any other insurance application pending? (If yes, provide details): | ○ Y ● N | ○ Y ○ N |
| 3. Have you had any insurance application declined, postponed, rated, modified, or refused for reinstatement? (If yes, provide details): | ○ Y ● N | ○ Y ○ N |

# Life Insurance Application (page 4 of 8)

| PERSONAL HISTORY QUESTIONS | Primary Insured | Other Insured |
|---|---|---|
| 1. Are you a citizen of the United States? If "No", what is your citizenship? Immigration status? Type of visa? | ●Y ○N | ○Y ○N |
| 2. Have you traveled or resided outside the United States or Canada within the past 2 years or plan to do so within the next 2 years? | ○Y ●N | ○Y ○N |
| 3. Have you been convicted of a felony or are currently on parole for any offense? | ○Y ●N | ○Y ○N |
| 4. In the past 10 years have you been convicted of DWI/DUI? In the past 5 years have you had any speeding tickets or other driving violations? | ○Y ●N | ○Y ○N |
| 5. In the past 5 years have you participated in ballooning, bungee jumping, cliff diving, hang gliding, motorized racing, parachuting, mountain or rock climbing, skin or scuba diving, or any similar avocation? | ○Y ●N | ○Y ○N |
| 6. In the past 5 years have you flown as a pilot, student pilot, or crew member of an aircraft? | ○Y ●N | ○Y ○N |
| 7. In the past 10 years have you ever sought or received treatment, advice, or counseling for the use of alcohol? | ○Y ●N | ○Y ○N |
| 8. Have you ever sought or received treatment, advice, or counseling for the use of any narcotic, barbiturate, stimulant, amphetamine, hallucinogenic, street, or prescription drugs? Have you ever been arrested for the use or possession of such drug or are you currently using these drugs? | ○Y ●N | ○Y ○N |
| 9. Within the past 10 years have you made a claim or received benefits for disability or worker's compensation as a result of a sickness or injury? | ○Y ●N | ○Y ○N |
| 10. Within the past 7 years, have you filed for bankruptcy? | ○Y ●N | ○Y ○N |
| 11. (Only required when applying for HomeCertain term insurance) In the past 13 months have you contracted for a home mortgage, or refinanced an existing mortgage? If the answer is yes, please list the amount of the mortgage or refinancing, and the name and address of the lending institution. | ○Y ○N | ○Y ○N |

*Detail all Yes answers below (additional information may be required).*
*In addition, complete questionnaires for YES answers to Questions 2, 5, and 6.*

**Primary Insured**

Client earns 60,000 & wife earns $65,000 combined income $122,000

**Other Insured**

FIDELITY & GUARANTY LIFE INSURANCE COMPANY Baltimore, Maryland • AMERICOM LIFE & ANNUITY INSURANCE COMPANY Houston, Texas

# Life Insurance Application (page 5 of 8)

## PERSONAL PHYSICIAN INFORMATION – Primary Insured

*(Provide full name, address, and phone number of personal physician. Please write "NONE" if primary insured does not have a personal physician.)*

Name                                                                          Date Last Seen

**Judith Welch M.D.**

Address

                                                                              Phone

Reason for Last Visit

Result of Last Visit

## PERSONAL PHYSICIAN INFORMATION – Other Insured

*(Provide full name, address, and phone number of personal physician. Please write "NONE" if primary insured does not have a personal physician.)*

Name                                                                          Date Last Seen

Address

                                                                              Phone

Reason for Last Visit

Result of Last Visit

# Life Insurance Application (page 6 of 8)

## MEDICAL HISTORY QUESTIONS

| | Primary Insured | Other Insured |
|---|---|---|
| 1. Have you ever been treated for or diagnosed with: | | |
| a) Any heart disease, heart attack, chest pain, high blood pressure, high cholesterol, murmur, palpitations, or any other disorder of the heart or blood vessels? | ○Y ●N | ○Y ○N |
| b) Any circulatory disease, stroke, TIA, aneurysm, or any other disorder of the veins or arteries? | ○Y ●N | ○Y ○N |
| c) Any breathing or lung disorders, COPD, asthma, bronchitis, sleep apnea, or emphysema? | ○Y ●N | ○Y ○N |
| d) Diabetes, disorder of the immune system, blood disorder, or disorder of the glands? | ○Y ●N | ○Y ○N |
| e) Cancer, tumor, or cyst? | ○Y ●N | ○Y ○N |
| f) Depression, anxiety, dementia, Alzheimer's, or any other mental or nervous disease or disorder? | ○Y ●N | ○Y ○N |
| g) Hepatitis, gastritis, colitis, or any disease or disorder of the liver, stomach, pancreas, or intestines? | ○Y ●N | ○Y ○N |
| h) Any disease or disorder of the kidneys, bladder, prostate, urinary, or reproductive systems? | ○Y ●N | ○Y ○N |
| i) Arthritis or any disease or disorder of the muscles (to include strains or sprains), tendons, bones, spine, back, or joints? | ○Y ●N | ○Y ○N |
| j) Any disease or disorder of the skin, eyes, or ears? | ○Y ●N | ○Y ○N |
| k) Acquired Immune Deficiency Syndrome (AIDS), AIDS Related Complex (ARC), or positive test results indicating the presence of the AIDS virus? | ○Y ●N | ○Y ○N |
| 2. Are you currently prescribed any medication? | ○Y ●N | ○Y ○N |
| 3. Have you been prescribed medication in the past 5 years not previously mentioned? | ○Y ●N | ○Y ○N |
| 4. In the past 10 years, have you: | | |
| a) Been hospitalized or had surgery? | ○Y ●N | ○Y ○N |
| b) Had any electrocardiograms, x-rays, laboratory tests, treatments, or procedures? | ○Y ●N | ○Y ○N |
| c) Been recommended to have any test, treatment, or surgery which has not been performed? | ○Y ●N | ○Y ○N |
| d) Had any illness, disease, or injury that is not included in other answers? | ○Y ●N | ○Y ○N |
| 5. Has any parent, brother, or sister died from or had any occurrence of cancer, heart disease, diabetes, or any hereditary disease prior to age 60? | ○Y ●N | ○Y ○N |
| 6. Have you smoked cigarettes, pipes, or cigars, used snuff, chewed tobacco, or used any nicotine based product such as patch or gum? If yes, please detail the type(s) of tobacco product used and date of last use below. | ○Y ●N | ○Y ○N |

*Detail all Yes answers (include name of treating physician, diagnosis, date of diagnosis, and location of medical records)*

**Primary Insured**

_____

_____

_____

_____

**Other Insured**

_____

_____

_____

_____

# Life Insurance Application (page 7 of 8)

## AUTHORIZATION

I have read the questions and answers on this application. The statements made in this application are: complete; true; and correctly recorded. **I agree that: a copy of this application will form a part of any certificate/policy issued; and that no agent can pass on insurability or modify any certificate issued by the Insurer. I also agree that, except as provided in this application's Receipt, if issued, no insurance will take effect unless and until both of the following conditions are satisfied during each proposed insured's lifetime and while each proposed insured's health is as stated in this application: (1) this certificate/policy is delivered to and accepted by the Owner; and (2) the full initial premium for the mode of payment chosen is paid at our Home Office.** I acknowledge that I have received, read and understand the notices required by: the Medical Information Bureau, Inc.; and the Federal Fair Credit Reporting Act regarding investigative consumer reports.

I authorize any licensed physician, medical practitioner, hospital, clinic, the Veterans Administration, laboratory or other medical or medically-related facility, the Medical Information Bureau, Inc., insurance companies, a consumer reporting agency, prescription records, Pharmacy Benefit Manager, and my employer to give to the Insurer, its reinsurers, or other designee, medical and other information which may be pertinent to the evaluation regarding me or any member of my family who is applying for life insurance.

I also authorize the Insurer to obtain an investigative consumer report on me or on any member of my family who is also applying for life insurance. I understand that I am entitled to be interviewed by any consumer reporting agency which may be requested to prepare such a report as long as I can reasonably be contacted during normal business hours. Check if interview requested: ○

I understand that if my coverage includes the Accelerated Benefit Rider and I am later diagnosed with a terminal illness as defined in the rider, I may receive up to 50% of the certificate or policy's death benefit. Since I would receive a portion of my benefits early, the amount payable at the time of my death will be reduced. There is no premium charged for this rider. I understand that receipt of benefits may be taxable, and that the Insurer recommends consultation of a tax advisor prior to exercising this benefit.

I further understand that if I am purchasing a HomeCertain term life product, the mortgage information I supplied will be relied upon to determine my insurability for that product, in conjunction with my health information. As such, inaccurate information about my mortgage may result in a denial, rating, or rescission of my insurance coverage.

I authorize the Insurer and/or its reinsurer(s) to release information in my file to other insurance companies to which I may apply for life or health insurance coverage or to which a claim may be submitted.

This Authorization will be valid from the date signed for a period of 30 months; a photographic copy of this Authorization will be as valid as the original; I, or any of our representatives are entitled to receive a copy of this Authorization.

I understand that the information obtained by use of this authorization will be used to determine eligibility for insurance and/or benefits.

**Certification:** Under the penalties of perjury, I certify that my Social Security or Tax Identification Numbers provided on this form are true, correct and complete.

San Francisco, CA          8/27/05                                    Sean K. Keel
Signed at (City and State) on (Date)        _Sean K_

Signature of Primary Insured age 15 or more

Signature(s) of Additional Insured(s) age 15 or more

Signature of Owner(s) (if not the Primary Insured or if Primary Insured is less than age 18)

## AGENT CERTIFICATION

1) I have asked the questions contained in this application of the Insured(s) and Owner and duly recorded the answers; 2) to the best of my knowledge there is nothing affecting the insurability of any persons proposed for insurance as stated in this application; 3) if the initial premium was paid with the application, I have remitted it to the Insurer and delivered a Conditional Receipt to the Owner; 4) if Disclosure Statements are required by the state, I have given them to the applicant; 5) I have witnessed the signatures on this application.

**To the best of my knowledge, this application ○ does replace ● does not replace existing life insurance or annuities.**

If so, will this replacement be considered a 1035 Exchange? ○ Yes    ○ No

_Patrice A Pfitzer_                                              Date
Signature of Agent                                              9-19-05

Print Agent's Name:                          Agent Number
**Patrice Pfitzer**                          000204836

Agent's Phone Number        Agent's Fax Number        Agent's Email Address
**(916) 932-3210**          **(916) 932-3269**        ppfitzer@familydirect.com

If Bank Representative:    Name of Financial Institution        Branch #        Employee #

FIDELITY & GUARANTY LIFE INSURANCE COMPANY, Baltimore, Maryland • AMERICOM LIFE & ANNUITY INSURANCE COMPANY, Houston, Texas

Exhibit B



**FamilyDirect**
INSURANCE SERVICES, INC.

Sean K. Keel
1450 Oakdale Avenue
San Francisco, CA 94124

Dear Mr. Keel:

Your application has been received. Thank you for your participation. Please note that your check for
the initial premium was not included with your materials. **YOUR APPLICATION CANNOT BE
PROCESSED UNTIL YOUR PREMIUM CHECK HAS BEEN RECEIVED.** Please select a plan
from below:

### MONTHLY PAYMENT SYSTEM

Your premium can be automatically withdrawn from your checking account each month. The monthly
premium is only $97.47. If you want to utilize this system, please do the following:

1) Sign the enclosed authorization where indicated by the "**X**", and highlighted in yellow.

2) Write "**VOID**" on a check from your checking account and return it with your signed
authorization.

3) Write a check payable to "**F&G 20/20 ROP**" for $97.47. This will pay for the first month after the
policy is issued. Future payments will be drawn from your checking account.

### OTHER PREMIUM MODES

If you prefer to be billed directly at your home, you may pay premiums on either a quarterly,
semiannual, or an annual premium mode. The respective amounts are:

**Quarterly:$281.58          Semi-annual:$552.33          Annual:$1083.00**

If you choose one of these direct payment modes, please enclose a check made payable to "**F&G 20/20
ROP**" for the amount representing the mode you've chosen. All future premium notices will be sent to
your home.

**TO ASSIST IN ASSURING YOUR PARTICIPATION AT THE LOW RATES YOU'VE BEEN
QUOTED, AND TO FACILITATE THE PROCESSING OF YOUR POLICY, YOU ARE
ENCOURAGED TO RETURN THE ABOVE REQUIRMENTS IN THE ENCLOSED
ENVELOPE TODAY.** As always, if you should need assistance, please feel free to call me at 1-
800-259-3430 ext.121. **Thank you.**

Sincerely,
Patrice Pfitzer
Family Direct Insurance Services, Inc.

Exhibit C



Sean Keel
1455 Oakdale Ave. 94124
San Francisco Ca.

90-7162/3222

Date 9/10/2005

93

PAY
to the order of    F & G 20/20 Top

$ 97.47

Ninety seven dollars    47/100    Dollars

Washington Mutual
Washington Mutual Bank
San Francisco-Potrero Financial Ctr 0802
2300 16th Street Ste. 290
San Francisco, CA 94103
1-800-788-7000
24 hour Customer Service

Sean Keel

Memo  Insurance

⑆3222716 27⑆  1883177313⑈  0093

Exhibit D

 *FamilyDirect*
INSURANCE SERVICES, INC.

**October 19, 2005**

Sean K. Keel
1450 Oakdale Avenue
San Francisco, CA 94124

Dear Mr. Keel:

Please find your new policy attached.  This **sensible and economical** coverage can  be used to **pay off your $620,000 mortgage if you die**.  It provides **quality protection** for your family - **affordability** and **peace of mind** for you.

<u>**Please make a record of the following information:**</u>
**Your policy number is:L0531119**
**Your policy date is:10/10/2005**
**The coverage amount is:$620,000**
**The current quarterly premium is:$378.30**

We at Family Direct consider our greatest strength to be our people.  Because we have families, just like you, we know you need good service and value.  If you should have questions or need service,  **please call us**.  You'll find us to be friendly and helpful.  **<u>Thank you.</u>**

**Very Truly Yours,**
**Patrice Pfitzer**
**Customer Service Representative**

**P.S.  You can reach me personally at 1-800-259-3430 ext. 121.**

**870 Glenn Drive – Folsom, CA 95630**

**PROTECTION FOR YOUR FAMILY.... PEACE OF MIND FOR YOU**

Exhibit E



A Member of the OLD MUTUAL Group

Baltimore, MD

DLF 4000 (08-2003)

**FIDELITY AND GUARANTY LIFE INSURANCE COMPANY**

**A STOCK COMPANY**

Home Office: **Baltimore, Maryland**

This certificate is issued to the Owner named on the Certificate Information page and evidences the Insured's coverage under the Group Policy. You may examine the Group Policy at the office of the policyholder. This certificate is issued in consideration of the application and payment of premiums.

While this certificate is in effect, we will pay the death benefit if the Insured dies before the Expiration Date of any term. Any payment will be made subject to this certificate's provisions.

READ YOUR CERTIFICATE CAREFULLY. This certificate of life insurance is part of a legal contract between the policyholder and the Company. This certificate contains terms and provisions that are applicable to all Owners under the Group Policy.

Signed for the Company.

*[signature]*

President

AGENT NAME AND ADDRESS:
PATRICE PFITZER
P.O. BOX 127
FOLSOM, CA 95763

(If applicable)
Countersigned at:
City: _____   State: _____   Date: _____
By Agent: _____

**RIGHT TO CANCEL. If you decide not to keep this certificate, return it within 20 days after you receive it. It may be returned to any of our agents or it may be mailed to us. The return of this certificate will void it from the beginning. Any premium paid will be refunded. We will make any refund within 10 days of our receipt of this certificate.**

GROUP LEVEL TERM LIFE INSURANCE CERTIFICATE

TERM LIFE

<u>NOTICE TO OWNER:</u> If you have questions or need information about this certificate or if you need assistance in resolving a complaint, please call us at 1-888-513-8797.

Premiums are payable in advance while the Insured is alive and until the Expiration Date of each term. After the Premium Guarantee Period, each renewal premium will not be more than the Guaranteed Maximum Total Premium shown in the TABLE OF ANNUAL RENEWAL PREMIUMS. Renewable to age 95. Death benefit is payable if Insured dies before the Expiration Date and while this certificate is in effect. Nonparticipating: dividends are not payable

# INDEX

Page

| | |
|---|---|
| BENEFICIARY | 8 |
| Change of Beneficiary(ies) | 8 |
| Irrevocable Beneficiary(ies) | 8 |
| Payment to Beneficiary(ies) | 8 |
| CERTIFICATE INFORMATION | 3-4 |
| Certificate Data | 3 |
| Certificate, Premium, and Rider Information | 3 |
| Table of Annual Renewal Premiums | 4 |
| CONVERSION | 12 |
| New Individual Policy | 12 |
| Suicide and Incontestability | 12 |
| DEATH BENEFIT | 13 |
| Interest Paid on Death Benefit | 13 |
| Payment of Death Benefit | 13 |
| Suicide Exclusion | 13 |
| DEFINITIONS | 5 |
| GENERAL PROVISIONS | 6-7 |
| Arbitration | 7 |
| Assignment | 7 |
| Certificate Changes | 7 |
| Claims of Creditors | 7 |
| Effective Date | 7 |
| Entire Contract | 6 |
| Incontestability | 6 |
| Misstatement of Birth Date or Sex | 6 |
| Nonparticipating | 7 |
| Representations | 6 |
| Termination of Certificate | 7 |

Pag

| | |
|---|---|
| METHODS OF SETTLEMENT | 14-1 |
| Amount of Payment | 1 |
| Election of Option | 1 |
| Interest Paid on Proceeds | 1 |
| Options | 14-1 |
| Payee | 1 |
| Payment | 1 |
| Payment of Proceeds | 1 |
| Table of Guaranteed Monthly Payments | 1 |
| OWNERSHIP | |
| Change of Owner and Contingent Owner | |
| Ownership Rights | |
| Ownership Succession | |
| PREMIUMS | |
| Adjustment of Renewal Premiums | |
| Grace Period | |
| Premium Payments | |
| Renewal | |
| REENTRY OPTION | 1 |
| New Certificate | 1 |
| Suicide and Incontestability | 1 |
| REINSTATEMENT | 1 |
| Effective Date of Reinstatement | 1 |
| Reinstatement Requirements | 1 |

Any endorsements, restrictions, riders, or additional benefits follow Page 16.

FGL RTRC-C (12-99)

# CERTIFICATE INFORMATION

## CERTIFICATE DATA

INSURED
SEAN K KEEL

DATE OF ISSUE
OCTOBER 10, 2005

EXPIRATION DATE
OCTOBER 10, 2025

CERTIFICATE NUMBER
L0531119

CERTIFICATE DATE
OCTOBER 10, 2005

POLICYHOLDER
TRUSTEE FOR FIDELITY AND GUARANTY
GROUP INSURANCE TRUST

PREMIUM CLASS
NON-TOBACCO

AGE/SEX AT ISSUE
34    MALE

FINAL REENTRY DATE
OCTOBER 10, 2026

OWNER
SEAN K KEEL

FACE AMOUNT
$620,000

PREMIUM GUARANTEE PERIOD
20 YEARS FROM POLICY DATE

*(OWNER INFORMATION IS SUBJECT TO ANY CHANGE SUBMITTED AND ON RECORD.)*

## CERTIFICATE, PREMIUM, AND RIDER INFORMATION

|  | FIRST ANNUAL* PREMIUM | COVERAGE CAN CONTINUE THROUGH |
|---|---|---|
| LEVEL TERM LIFE INSURANCE INITIAL TERM - 20 YEARS NON-TOBACCO PREMIUM | $ 762.60 | OCTOBER 10, 2066 |
| ACCELERATED BENEFIT RIDER EFFECTIVE - OCTOBER 10, 2005 |  |  |
| RETURN OF PREMIUM RIDER NON-TOBACCO PREMIUM | $632.40 |  |
| ANNUAL CERTIFICATE FEE: | $60.00 |  |
| TOTAL FIRST ANNUAL PREMIUM: | $1,455.00 |  |

*FOR OTHER PREMIUM PAYMENT INTERVALS, MULTIPLY THE FIRST ANNUAL PREMIUM BY:
- .51 FOR SEMI-ANNUAL;
- .26 FOR QUARTERLY;
- .09 FOR MONTHLY.

RENEWAL PREMIUMS ARE SHOWN IN THE TABLE OF ANNUAL RENEWAL PREMIUMS WHICH FOLLOWS.

Page 3

FGL RTRC-C (12-99)

## CERTIFICATE INFORMATION *(Cont'd)*

### TABLE OF ANNUAL RENEWAL PREMIUMS

CERTIFICATE NUMBER: L0531119

| CERTIFICATE YEAR BEGINNING OCT 10 | CURRENT LEVEL TERM LIFE INSURANCE** | CURRENT TOTAL PREMIUM*** | GUARANTEED MAXIMUM TOTAL PREMIUM*** | CERTIFICATE YEAR BEGINNING OCT 10 | CURRENT LEVEL TERM LIFE INSURANCE** | CURRENT TOTAL PREMIUM*** | GUARANTEED MAXIMUM TOTAL PREMIUM*** |
|---|---|---|---|---|---|---|---|
| 2006 | 822.60* | 1,455.00* | 1,455.00 | 2036 | 26,515.40 | 26,515.40 | 32,188.40 |
| 2007 | 822.60* | 1,455.00* | 1,455.00 | 2037 | 28,952.00 | 28,952.00 | 35,710.00 |
| 2008 | 822.60* | 1,455.00* | 1,455.00 | 2038 | 31,314.20 | 31,314.20 | 39,523.00 |
| 2009 | 822.60* | 1,455.00* | 1,455.00 | 2039 | 33,856.20 | 33,856.20 | 43,615.00 |
| 2010 | 822.60* | 1,455.00* | 1,455.00 | 2040 | 36,807.40 | 36,807.40 | 48,079.00 |
| 2011 | 822.60* | 1,455.00* | 1,455.00 | 2041 | 40,422.00 | 40,422.00 | 53,119.60 |
| 2012 | 822.60* | 1,455.00* | 1,455.00 | 2042 | 44,768.20 | 44,768.20 | 59,753.60 |
| 2013 | 822.60* | 1,455.00* | 1,455.00 | 2043 | 49,691.00 | 49,691.00 | 65,408.00 |
| 2014 | 822.60* | 1,455.00* | 1,455.00 | 2044 | 55,066.40 | 55,066.40 | 72,972.00 |
| 2015 | 822.60* | 1,455.00* | 1,455.00 | 2045 | 60,795.20 | 60,795.20 | 81,466.00 |
| 2016 | 822.60* | 1,455.00* | 1,455.00 | 2046 | 66,759.60 | 66,759.60 | 90,580.00 |
| 2017 | 822.60* | 1,455.00* | 1,455.00 | 2047 | 73,003.00 | 73,003.00 | 100,283.00 |
| 2018 | 822.60* | 1,455.00* | 1,455.00 | 2048 | 79,599.80 | 79,599.80 | 110,482.00 |
| 2019 | 822.60* | 1,455.00* | 1,455.00 | 2049 | 86,488.00 | 86,488.00 | 121,071.60 |
| 2020 | 822.60* | 1,455.00* | 1,455.00 | 2050 | 93,599.40 | 93,599.40 | 132,306.00 |
| 2021 | 822.60* | 1,455.00* | 1,455.00 | 2051 | 100,859.60 | 100,859.60 | 144,625.40 |
| 2022 | 822.60* | 1,455.00* | 1,455.00 | 2052 | 107,295.20 | 107,295.20 | 158,346.00 |
| 2023 | 822.60* | 1,455.00* | 1,455.00 | 2053 | 112,943.40 | 112,943.40 | 173,846.00 |
| 2024 | 822.60* | 1,455.00* | 1,455.00 | 2054 | 119,279.80 | 119,279.80 | 191,317.60 |
| 2025 | 7,338.80 | 7,338.80 | 10,432.60 | 2055 | 127,780.00 | 127,780.00 | 210,413.60 |
| 2026 | 8,182.00 | 8,182.00 | 11,561.00 | 2056 | 139,919.60 | 139,919.60 | 230,700.00 |
| 2027 | 9,198.80 | 9,198.80 | 12,819.60 | 2057 | 155,692.40 | 155,692.40 | 251,780.00 |
| 2028 | 10,352.00 | 10,352.00 | 14,152.60 | 2058 | 174,118.80 | 174,118.80 | 273,461.40 |
| 2029 | 11,666.40 | 11,666.40 | 15,591.00 | 2059 | 195,198.80 | 195,198.80 | 295,316.40 |
| 2030 | 13,173.00 | 13,173.00 | 17,221.60 | 2060 | 218,932.40 | 218,932.40 | 317,636.40 |
| 2031 | 14,890.40 | 14,890.40 | 19,032.00 | 2061 | 234,792.00 | 234,792.00 | 340,737.60 |
| 2032 | 16,862.00 | 16,862.00 | 21,047.00 | 2062 | 251,451.40 | 251,451.40 | 364,992.00 |
| 2033 | 19,075.40 | 19,075.40 | 23,341.00 | 2063 | 269,450.00 | 269,450.00 | 391,205.60 |
| 2034 | 21,462.40 | 21,462.40 | 25,963.60 | 2064 | 289,544.20 | 289,544.20 | 420,469.60 |
| 2035 | 23,967.20 | 23,967.20 | 28,921.00 | 2065 | 315,113.00 | 315,113.00 | 457,694.40 |

FGL RTRC-C (12-99)

*(TABLE CONTINUED ON NEXT PAGE)*

# CERTIFICATE INFORMATION *(Cont'd)*

## TABLE OF ANNUAL RENEWAL PREMIUMS *(Cont'd)*

FOR OTHER PREMIUM PAYMENT INTERVALS, MULTIPLY THE FIRST ANNUAL PREMIUM BY:
- .51 FOR SEMI-ANNUAL;
- .26 FOR QUARTERLY;
- .09 FOR MONTHLY.

\* THESE PREMIUMS ARE PAID DURING THE PREMIUM GUARANTEE PERIOD AND WILL NOT CHANGE. WE RESERVE THE RIGHT TO CHANGE THE CURRENT LIFE INSURANCE PREMIUM FOR EACH CERTIFICATE YEAR AFTER THE PREMIUM GUARANTEE PERIOD SHOWN UNDER CERTIFICATE DATA IN THE CERTIFICATE INFORMATION SECTION. IT MAY BE MORE OR LESS THAN THAT SHOWN, BUT THE CURRENT TOTAL PREMIUM WILL NEVER BE MORE THAN THE GUARANTEED MAXIMUM TOTAL PREMIUM. SEE PREMIUMS SECTION.

\*\* $60.00 CERTIFICATE FEE INCLUDED

\*\*\* IF APPLICABLE, THESE PREMIUMS INCLUDE THE ANNUAL RIDER PREMIUMS AS SHOWN IN THE TABLE WHICH FOLLOWS, TABLE OF ANNUAL RENEWAL PREMIUMS - RIDERS.

FGL RTRC-C (12-99)

# CERTIFICATE INFORMATION *(Cont'd)*

## TABLE OF ANNUAL RENEWAL PREMIUMS - RIDERS

CERTIFICATE NUMBER: L0531119

| CERTIFICATE YEAR BEGINNING OCT 10 | RETURN OF PREMIUM |
|---|---|
| 2006 | 632.40 |
| 2007 | 632.40 |
| 2008 | 632.40 |
| 2009 | 632.40 |
| 2010 | 632.40 |
| 2011 | 632.40 |
| 2012 | 632.40 |
| 2013 | 632.40 |
| 2014 | 632.40 |
| 2015 | 632.40 |
| 2016 | 632.40 |
| 2017 | 632.40 |
| 2018 | 632.40 |
| 2019 | 632.40 |
| 2020 | 632.40 |
| 2021 | 632.40 |
| 2022 | 632.40 |
| 2023 | 632.40 |
| 2024 | 632.40 |
| 2025 | 0.00 |
| 2026 | 0.00 |
| 2027 | 0.00 |
| 2028 | 0.00 |
| 2029 | 0.00 |
| 2030 | 0.00 |
| 2031 | 0.00 |
| 2032 | 0.00 |
| 2033 | 0.00 |
| 2034 | 0.00 |
| 2035 | 0.00 |
| 2036 | 0.00 |
| 2037 | 0.00 |
| 2038 | 0.00 |
| 2039 | 0.00 |
| 2040 | 0.00 |
| 2041 | 0.00 |
| 2042 | 0.00 |
| 2043 | 0.00 |
| 2044 | 0.00 |
| 2045 | 0.00 |
| 2046 | 0.00 |
| 2047 | 0.00 |
| 2048 | 0.00 |
| 2049 | 0.00 |
| 2050 | 0.00 |

FGL RTRC-C (12-99)

*(TABLE CONTINUED ON NEXT PAGE)*

# CERTIFICATE INFORMATION *(Cont'd)*

## TABLE OF ANNUAL RENEWAL PREMIUMS - RIDERS *(Cont'd)*

| CERTIFICATE YEAR BEGINNING OCT 10 | RETURN OF PREMIUM |
|---|---|
| 2051 | 0.00 |
| 2052 | 0.00 |
| 2053 | 0.00 |
| 2054 | 0.00 |
| 2055 | 0.00 |
| 2056 | 0.00 |
| 2057 | 0.00 |
| 2058 | 0.00 |
| 2059 | 0.00 |
| 2060 | 0.00 |
| 2061 | 0.00 |
| 2062 | 0.00 |
| 2063 | 0.00 |
| 2064 | 0.00 |
| 2065 | 0.00 |

FOR OTHER PREMIUM PAYMENT INTERVALS, MULTIPLY THE FIRST ANNUAL PREMIUM BY:
- .51 FOR SEMI-ANNUAL;
- .26 FOR QUARTERLY;
- .09 FOR MONTHLY.

FGL RTRC-C (12-99)

# DEFINITIONS

| | |
|---|---|
| Age | Insured's Age on his or her nearest or last birthday. |
| Beneficiary | The person(s) named in the application or in the most recent change on record to receive the death benefit. |
| Certificate Date | The date on which the initial premium is due and on which coverage starts. Premium due dates, certificate months, years, and anniversaries are measured from this date. |
| Contingent Beneficiary | The person(s) named in the application or in the most recent change on record to receive the death benefit if the Beneficiary is not alive at the Insured's death. |
| Contingent Owner | The person(s) named in the application or in the most recent change on record to become the Owner of this certificate if the Owner dies before the Insured. |
| Expiration Date | The date on which coverage is no longer in effect. The initial Expiration Date is shown under CERTIFICATE DATA in the CERTIFICATE INFORMATION section. The Expiration Date for any renewal term is one year after the preceding Expiration Date. |
| Face Amount | The amount of term life insurance coverage in effect and which is shown under CERTIFICATE DATA in the CERTIFICATE INFORMATION section. |
| Group Policy | The Group Term Life Insurance Policy under which this certificate is issued. |
| Insured | The person named under CERTIFICATE DATA in the CERTIFICATE INFORMATION section whose life is insured under this certificate. |
| Owner | The person(s) named as Owner in the application, or in the most recent change on record, who is entitled to the ownership rights stated in this certificate. |
| Policyholder | The owner of the Group Policy as shown under CERTIFICATE INFORMATION section. |
| We, Our, Us, Company | Fidelity and Guaranty Life Insurance Company. |
| Written Request | A request written to us and received by us. That request must be signed, dated, and notarized (if required by the form) on a form satisfactory to us. |
| You, Your | The Owner. |

FGL RTRC-C (12-99)

# GENERAL PROVISIONS

Any reference to Beneficiary, Contingent Beneficiary, irrevocable Beneficiary, Owner, Contingent Owner, and/or payee, may include multiple persons.

**Entire Contract**

The entire contract between the Contractholder and us consists of:
1. The Group contract;
2. The Contractholder's application, a copy of which is attached and made a part of the Contract;
3. All amendments, endorsements and riders, which are attached; and
4. The entire contract as to each participant.

The entire contract as to each participant consists of:
1. The Group contract;
2. This Certificate;
3. The application, a copy of which is attached and made a part of this Certificate; and
4. All amendments, endorsements, riders or any CERTIFICATE INFORMATION page(s) which is attached to or mailed to your last known address.

Only the President, the Secretary, or a Vice President in our Home Office can agree to change or waive any provisions which are part of the entire contract. The change or waiver must be in writing.

**Representations**

We will rely on all statements made in an application. Those statements will be considered *representations and not warranties.* We will not use any statement in defense of a claim unless that statement is made in an application which is part of the entire contract.

**Incontestability**

We will not contest this certificate based on statements made in an application after this certificate has been in effect during the Insured's lifetime for 2 years from the Date of Issue. We can contest its validity for failure to pay premiums at any time.

A new period of contestability will apply if reinstatement occurs or additional coverage is added by rider. We will not contest this certificate based on statements made in the application for reinstatement or for additional coverage after this certificate has been in effect during the Insured's lifetime for 2 years from the effective date of reinstatement or from the effective date of the additional coverage. For any increase in coverage, only the additional coverage added by rider will be contestable.

This **Incontestability** provision applies to any rider unless that rider has its own **Incontestability** provision, in which case that rider's provision will apply.

If this certificate was issued as a result of a prior certificate's **REENTRY OPTION** being exercised, the amount of insurance that we may contest will be limited to:
- The Face Amount of this certificate; less
- The amount of insurance that the first year premium for this certificate would have purchased as the
- next annual premium under the prior certificate.

However, the above limitation will not apply if this certificate has been reinstated.

**Misstatement of Birth Date or Sex**

If there has been a misstatement as to the Insured's birth date or sex, this certificate's death benefit will be adjusted to what the premiums paid would have bought for the correct birth date or sex.

FGL RTRC-C (12-99)

# GENERAL PROVISIONS *(Cont'd)*

**Assignment**

We will not be responsible for the validity or sufficiency of any assignment. To be binding on us, an executed assignment must be by Written Request and consented to by any irrevocable Beneficiary. Your rights and any Beneficiary's interest will be subject to the assignment. Assignment of the certificate may subject you to income and gift tax.

**Effective Date**

The effective date for:
- Coverage provided in the original application will be the Certificate Date.
- Reinstatement will be as stated in the **Effective Date of Reinstatement** provision.

**Certificate Changes**

Any Written Request to change the Owner, Contingent Owner, or Beneficiary will take effect on the date the request was originally signed, even if the Owner who signed the request or the Insured has since died. However, the change will be subject to any payments made or actions taken by us before the request was received and recorded.

We may require the return of this certificate for endorsement or otherwise in the event of a change in the Owner, Contingent Owner, Beneficiary, settlement option, or other change.

**Claims of Creditors**

To the extent permitted by law and except to the extent you have assigned this certificate, no benefit paid, or to become payable, will be subject to any claim or process of law by any creditor.

**Arbitration**

Any controversy arising under this certificate, or any amendments to or breach of this certificate, will be determined and settled exclusively by final and binding arbitration held in your state of residence, in accordance with the arbitration rules and procedures of JAMS/Endispute or its successor. The arbitrators will be selected from JAMS/Endispute's panel of retired judges. Any award rendered through arbitration will be final and binding on each and all parties involved, and judgment may be entered thereon in any court of competent jurisdiction.

**Termination of Certificate**

This certificate will end at the earliest of the following events:
- The grace period ends without receipt of required payment.
- The certificate is exchanged for a new certificate.
- The Expiration Date of the current term unless the certificate is renewed for another term.
- The Insured dies.
- The Group Contract terminates.

Coverage is not in effect on the Expiration Date of any term unless this certificate is renewed for another term.

**Nonparticipating**

This certificate does not share in our profits or surplus. No dividends will be paid.

FGL RTRC-C (12-99)

# OWNERSHIP

**Ownership Succession**

If you die before the Insured, at your death, ownership of this certificate will pass to the person(s) then living in the order which follows:
- Any joint Owner(s).
- Any Contingent Owner.
- Estate of the last Owner to Die.

If more than one natural person succeeds to the ownership rights of this certificate, then such persons will own this certificate as joint Owners. Any instructions or designations of the prior Owner will continue unless changed in accordance with this certificate by the succeeding Owner.

**Ownership Rights**

While the Insured is alive, you may:
- Exercise any of the rights under this certificate.
- Assign this certificate.
- Subject to our agreement, change or amend this certificate.

The exercise of any ownership right is subject to the written consent of any joint Owner(s).

**Change of Owner and Contingent Owner**

While the Insured is alive, you may transfer ownership by Written Request . If you transfer ownership, any earlier choice of any Contingent Owner will be canceled. A change in ownership may subject you to income and gift tax.

# BENEFICIARY

**Irrevocable Beneficiary**

Any Beneficiary may be named an irrevocable Beneficiary. The consent of any irrevocable Beneficiary is needed to exercise any ownership right, including assigning the certificate, except the following:
- Change the frequency of premium payment.
- Reinstate this certificate.

**Change of Beneficiary**

While the Insured is alive, you may change the Beneficiary and any Contingent or irrevocable Beneficiary by Written Request. Irrevocable Beneficiary(ies) must give written consent to any such change.

**Payment to Beneficiary**

Before making any payment, we may require evidence as to the identity, age, and other facts about any person or class designated as the Beneficiary. We are entitled to make payments based on that evidence.

FGL RTRC-C (12-99)

# PREMIUMS

**Premium Payments**

All premium payments:
- Must be paid on or before their due date.
- Must be made at our Home Office or any administrative office that we maintain.
- Must be in the currency of the United States of America.
- May be made by a currently dated check or money order made payable to Fidelity and Guaranty Life Insurance Company.

Before any insurance becomes effective, the first premium for each term must be paid while the Insured is alive.

We will issue a receipt on request.

Premiums may be paid at annual, semi-annual, quarterly, or monthly intervals. The charge for different premium payment intervals is shown under CERTIFICATE, PREMIUM, AND RIDER INFORMATION in the CERTIFICATE INFORMATION section. You may change the premium payment interval on any certificate anniversary. Our consent is needed if any change results in a premium of less than $25.

**Renewal**

The first premium for each term is due on the Expiration Date of the preceding term.

The life insurance and rider coverage will automatically renew for a 1 year term if:
- Under CERTIFICATE, PREMIUM, AND RIDER INFORMATION in the CERTIFICATE INFORMATION section it indicates that the coverage may be continued.
- All premiums for the preceding expired term have been paid and the renewal premium for the new term has been paid.
- The Expiration Date of the new term is on or before the certificate anniversary on which the Insured is Age 95.

**Adjustment of Renewal Premiums**

Renewal premiums are shown in the TABLE OF ANNUAL RENEWAL PREMIUMS in the CERTIFICATE INFORMATION section. For each certificate year after the Premium Guarantee Period shown under CERTIFICATE DATA in the CERTIFICATE INFORMATION section, we reserve the right to change the Current Life Insurance Premium shown in the table. It may be more or less than that shown, but the Current Total Premium will never be more than the Guaranteed Maximum Total Premium shown in that table. Before each certificate year, we will send to you at your last known address written notice of the premium due for the next certificate year.

Any change in premium will be made on the same basis for all certificates in effect the same length of time, issued to Insureds of the same Premium Class and issue age. No change in Premium Class or premium will occur on renewal because the Insured's health has worsened or occupation has changed. Each change will be based on our expectations as to future mortality, investment earnings, expense, and persistency experience.

**Grace Period**

We will allow a 31 day grace period after the premium due date to pay each premium after the first. This certificate remains in effect during any grace period. If a premium is not paid by the end of that period, this certificate will terminate as of the premium due date. If the Insured dies during a grace period, the overdue premium from its due date to the end of that period will be deducted from the death benefit. As used here, "premium" means the premium actually billed in the premium notice.

FGL RTRC-C (12-99)

# REINSTATEMENT

**Reinstatement Requirements**

If this certificate terminates as provided in the **Grace Period** provision, it may be reinstated within 3 years from the due date of the first unpaid premium. "Reinstatement" means to put this certificate's coverage back into effect.

We will require for each life insured under this certificate and any attached rider:
- Written application for reinstatement;
- Evidence satisfactory to us that each Insured is insurable at the Premium Class shown under CERTIFICATE DATA and CERTIFICATE, PREMIUM, and RIDER INFORMATION sections in the CERTIFICATE INFORMATION section at the time the certificate terminated; and
- Payment of overdue premiums with interest from their due dates at 6% compounded annually.

**Effective Date of Reinstatement**

The effective date of reinstatement will be the date we approve the application for reinstatement. Once approved, we will mail to you at your last known address:
- A copy of the reinstatement application showing the effective date of reinstatement; and
- A copy of any supplemental application which may have been required as evidence of insurability

FGL RTRC-C (12-99)

# REENTRY OPTION

**New Certificate**

Subject to the requirements stated below, this certificate may be exchanged for a new certificate of the same plan on the life of the Insured at a premium rate based on evidence of insurability at that time.

This option cannot be exercised before the later of:
- The tenth certificate anniversary; or
- The end of the Initial Term.

This option cannot be exercised after the Final Reentry Date shown under CERTIFICATE DATA in the CERTIFICATE INFORMATION section.

Any new certificate issued under this provision will be in lieu of, and not in addition to, coverage provided under this certificate. Coverage under this certificate ends when coverage under the new certificate begins.

We will require:
- That this certificate be in effect at the time of written application for exchange.
- Your written application for exchange (including payment of the initial premium on the new certificate) before the Final Reentry Date stated under CERTIFICATE DATA in the CERTIFICATE INFORMATION section.
- That the Insured not be disabled on the date of written application for exchange.
- Evidence satisfactory to us, and at our expense, that the Insured is insurable.
- Surrender of this certificate to us.

Any new certificate will be issued:
- With a Certificate Date as of the date we approved the reentry.
- At the Insured's age on the new Certificate Date.
- At the premium rate in effect for new issues at the Insured's Age on the new Certificate Date.
- At the Premium Class the Insured qualifies for based on evidence of insurability.
- For an amount equal to or less than the Face Amount of this certificate, but not less than the minimum required for this plan.

Your written application for exchange may request that any available rider providing additional benefits be attached to the new certificate. Any rider is subject to the rules and premium rates we are using on the new Certificate Date.

**Suicide and Incontestability**

The **Suicide Exclusion** provision in the **DEATH BENEFIT** section and the **Incontestability** provision in the **GENERAL PROVISIONS** section describe how those provisions apply if a new certificate is issued under the **REENTRY OPTION**.

FGL RTRC-C (12-99)

# CONVERSION

**New Individual Policy**    1.    If the Insured's coverage or any portion of it ends for a reason other than non-payment of premium, the Insured's age, or those reasons described in number 2 below, you may have us issue a policy of individual life insurance on the life of the Insured.

Any new policy:
- Must be on a plan being offered by us for this purpose at the time of conversion.
- May not be term insurance.
- May not be an amount greater than the Insured's coverage under the group certificate.

Evidence of insurability satisfactory to us will be required only if the new policy is to include:
- Any rider providing additional benefits.
- An option to apply dividends to purchase one year term insurance additions.

The Insured must apply for the individual policy within 31 days after his/her coverage under the group policy ends and pay the required premium, based on our table of rates for such policies, the Insured's age and class of risk.

The individual policy will take effect at the end of the 31 day conversion period. If the Insured dies during this 31 day period, then we will pay under the Group Policy the amount of life insurance that you were entitled to convert. It does not matter whether the Insured applied for the individual policy. If such policy is issued, it will be in exchange for any further benefits under the Group Policy.

2.    If the Insured's coverage ends because the Group Policy is terminated, or is amended to terminate coverage for the Insured's class, and the Insured has been covered under the Group Policy for at least 5 years, we will issue a policy of individual life insurance subject to the same conditions and limitations listed above. The face amount of the individual policy will be equal to the face amount under the Group Policy, less any amount of group life insurance for which he/she is eligible on the date the Group Policy is terminated, or for which he/she becomes eligible within 31 days of such termination.

3.    During the first 10 certificate years, and while this certificate is in effect, the Insured may request us to convert his/her group coverage to an individual life insurance policy. We will issue that policy subject to the same conditions stated in number 1 above.

**Suicide and Incontestability**    Any new policy's provisions for suicide and incontestability will have the same effective dates as those provisions have in this certificate. However, if the new policy contains any new benefits provided by rider, any provisions for suicide and incontestability in such new rider will start on that rider's effective date.

FGL RTRC-C (02-2003)

# DEATH BENEFIT

**Payment of**
**Death Benefit**

Payment of the death benefit will be made at our Home Office.

We will require:
- That death occur while this certificate is in effect and before the Expiration Date of any term;
- Return of this certificate or a certification (on a form we accept) stating that this certificate has been lost or destroyed;
- Proof of the Insured's death on a form we accept; and
- A Written Request for the death benefit.

The death benefit to be paid at the Insured's death will be:
- The Face Amount in effect; plus
- Any additional benefit provided by rider; plus
- The part of any premium paid beyond the Insured's month of death, unless the premium was waived; less
- The unpaid premium from its due date to the end of the grace period if death occurs within the grace period.

Subject to any assignment, any death benefit due will be paid to the person(s) living on the date of such death in the order which follows:
- The Beneficiary.
- Any Contingent Beneficiary.
- The Insured's estate.

If any Beneficiary or Contingent Beneficiary dies at the same time as the Insured or within 10 days after the death of the Insured, the death benefit will be paid as if the Insured had survived such Beneficiary or Contingent Beneficiary.

**Interest Paid on**
**Death Benefit**

Interest will be paid on the death benefit as required by state law.

**Suicide Exclusion**

If the Insured dies by suicide, while sane or insane, within 2 years from the Date of Issue or from the effective date of the last reinstatement, if any, no death benefit will be paid.  Instead, we will limit payment to:
- The premiums paid for benefits on the Insured's life; less
- The premiums paid for benefits on any person other than the Insured.

This certificate must be in effect on the date of the Insured's suicide.

However, the exclusion will not apply if:
- This certificate was issued as a result of a prior certificate's **REENTRY OPTION** being exercised; and
- More than 2 years have passed from the effective date of the last reinstatement, if any, under this certificate or the prior certificate.

This provision does not apply if this certificate was issued to a Missouri citizen unless it can be proven that the Insured intended suicide when this certificate was applied for.

# METHODS OF SETTLEMENT

**Payment of Proceeds**

When the Insured dies, all or part of any proceeds payable may be paid under a settlement option rather than in a lump sum.

We may issue an annuity contract to provide payments under settlement options 1, 2, 3, or 4. If the payee(s) elect(s) to receive a lump sum, at our option, payment will be made into an interest-bearing checking account established in the name(s) of the payee(s). The payee(s) will be able to withdraw all or part of the proceeds in the account at any time.

**Interest Paid on Proceeds**

Interest will be paid on the proceeds as required by state law.

**Payee**

The payee(s) will be the recipient of the death benefit.

**Election of Option**

While the Insured is alive, you may, by Written Request, elect or change a settlement option to take effect at the Insured's death. The recipient of the death benefit may not change the election you make. If no option is in effect at the Insured's death, the recipient of the death benefit may elect one by Written Request.

An election to receive proceeds under options 1, 2, 3, or 4 cannot be changed after payments start.

After we record any option election or change, it will take effect on the date the request was signed. That election or change will be subject to any payment made or action taken by us before we receive the request and record the change.

Descriptions of the settlement options follow. A table showing the guaranteed monthly payments under each option follows the descriptions of settlement options. Additional settlement options may be offered at the time proceeds are payable.

**Option 1**
**Income for a**
**Fixed Period**

Payments are guaranteed for the number of years and months chosen, which may not be less than 5 years nor more than 25 years. If the payee dies before the end of the fixed period, a death benefit consisting of the remaining guaranteed annuity payments, as scheduled, will be paid.

**Option 2**
**Life Income With a**
**Guaranteed Period**

Payments are guaranteed for the number of years chosen, which may not be less than 5 years nor more than 25 years. If the payee is alive at the end of the guaranteed period, payments will continue for as long as the payee is alive. If the payee dies before the end of the guaranteed period, a death benefit, consisting of the remaining guaranteed annuity payments, as scheduled, will be paid.

**Option 3**
**Life Income**

Payments will be made for as long as the payee is alive. No payments will be made after the payee's death.

**Option 4**
**Joint and Survivor**
**Life Income**

Payments will be made for as long as either the payee or joint payee is alive. The payments will:
- Be paid in a joint life income amount while both the payee and joint payee are alive.
- Continue to be paid after the death of either payee at the rate requested and for as long as the remaining payee or joint payee survives.
- Cease at the death of both the payee and joint payee.

FGL RTRC-C (12-99)

# METHODS OF SETTLEMENT *(Cont'd)*

**Option 5**
**Interest**

We will hold the proceeds until withdrawn by the payee or we have made payment at the payee's death. Interest credited on those proceeds will be paid out as elected. On request, we will hold the interest for up to 10 years without payment. Interest payments may be paid no more frequently than monthly.

The payee may withdraw all or part of the proceeds at any time. Also, by request, we will stop payments under this option and the remaining proceeds and interest to date will be paid as described under Option 1.

If the payee dies, any amount not yet paid, plus any unpaid interest, will be paid in one sum to the Payee's estate.

**Amount of Payment**

The amount of payments received under a settlement option will depend on the:
- Amount of proceeds payable;
- Settlement option chosen;
- Payment frequency chosen; and
- Sex and age nearest birthday of the person over whose life payments are made if Options 2, 3, or 4 are chosen.

We will then compare the mortality and interest rate factors reflected in the **TABLE OF GUARANTEED MONTHLY PAYMENTS** to the factors reflected in the current rates for any single premium immediate annuities which we may then offer and which the payee would be eligible to purchase. The payments will be based on whichever factors result in higher payments.

Any annuity contract sent to the payee will show the settlement option and amount and frequency of annuity payments, all of which will be fixed as of the date the annuity contract is issued.

**Payment**

Payments for an option will:
- Be made at the Home Office.
- Be paid by check or draft.

Before making any payment, we may require proof of existence and/or birth date of any payee or the Insured.

In all cases, our written consent for payment under any option will be required if:
- Any payee is a corporation, partnership, association, trustee, or assignee.
- The amount left with us is less than $2,000.
- Any annuity or interest payment is less than $20.

FGL RTRC-C (12-99)

# METHODS OF SETTLEMENT *(Cont'd)*

## TABLE OF GUARANTEED MONTHLY PAYMENTS
### Minimum Amount for Each $1,000 Applied

The Guaranteed Monthly Payments are based on a 3% effective annual interest rate and the 1983 Table "a" for Individual Annuities.

### Option 1. Income For a Fixed Period

| Period (Years) | Payment | Period (Years) | Payment | Period (Years) | Payment |
|---|---|---|---|---|---|
| 5 | $17.95 | 8 | $11.71 | 15 | $6.89 |
| 6 | 15.18 | 9 | 10.56 | 20 | 5.53 |
| 7 | 13.20 | 10 | 9.64 | 25 | 4.72 |

### Option 2. Life Income With a 10 Year Guaranteed Period

| Age | Male | Female | Age | Male | Female | Age | Male | Female |
|---|---|---|---|---|---|---|---|---|
| 50 | $4.24 | $3.90 | 55 | $4.65 | $4.24 | 60 | $5.17 | $4.68 |
| 51 | 4.31 | 3.96 | 56 | 4.74 | 4.32 | 65 | 5.84 | 5.25 |
| 52 | 4.39 | 4.03 | 57 | 4.84 | 4.40 | 70 | 6.65 | 6.00 |
| 53 | 4.47 | 4.09 | 58 | 4.94 | 4.49 | 75 | 7.54 | 6.93 |
| 54 | 4.56 | 4.16 | 59 | 5.05 | 4.58 | | | |

### Option 3. Life Income

| Age | Male | Female | Age | Male | Female | Age | Male | Female |
|---|---|---|---|---|---|---|---|---|
| 50 | $4.29 | $3.92 | 55 | $4.72 | $4.27 | 60 | $5.31 | $4.74 |
| 51 | 4.36 | 3.98 | 56 | 4.83 | 4.36 | 65 | 6.14 | 5.39 |
| 52 | 4.45 | 4.05 | 57 | 4.94 | 4.44 | 70 | 7.29 | 6.29 |
| 53 | 4.53 | 4.12 | 58 | 5.05 | 4.54 | 75 | 8.91 | 7.63 |
| 54 | 4.63 | 4.19 | 59 | 5.18 | 4.64 | | | |

### Option 4. Joint and 50% Survivor Life Income

| Male Payee Age | Female Joint Payee | | | | | |
|---|---|---|---|---|---|---|
| | 50 | 55 | 60 | 65 | 70 | 75 |
| 50 | $4.10 | $4.28 | $4.50 | $4.77 | $5.10 | $5.49 |
| 55 | 4.29 | 4.49 | 4.73 | 5.03 | 5.40 | 5.83 |
| 60 | 4.51 | 4.74 | 5.01 | 5.35 | 5.76 | 6.26 |
| 65 | 4.78 | 5.04 | 5.35 | 5.74 | 6.21 | 6.80 |
| 70 | 5.10 | 5.39 | 5.75 | 6.19 | 6.75 | 7.45 |
| 75 | 5.44 | 5.78 | 6.19 | 6.71 | 7.37 | 8.22 |

Payment amounts for other combinations of years, ages, sex, and rates will be furnished on request.

FGL RTRC-C (12-99)

# Accelerated Benefit Rider

---

*This rider is part of the certificate to which it is attached.*

THE DEATH BENEFIT WILL BE REDUCED WHEN THE ACCELERATED BENEFIT IS PAID. ACCELERATED BENEFIT PAYMENTS MAY BE TAXABLE. YOU SHOULD CONTACT A TAX ADVISOR FOR SPECIFIC ADVICE.

**Definitions**

<u>Insured</u>. The Insured(s) as shown under CERTIFICATE DATA in the CERTIFICATE INFORMATION section of the certificate.

<u>You, Your</u>. The Owner of the certificate.

<u>Accelerated Benefit</u>. The amount payable to you under this rider if the Insured has a Terminal Illness.

<u>Eligible Amount</u>. The amount payable under the certificate's Death Benefit on the date we approve your request for the Accelerated Benefit.

<u>Accelerated Amount</u>. The portion of the Eligible Amount you request. The Accelerated Amount may not exceed the lesser of:
- 50% of the Eligible Amount; or
- $250,000.

<u>Physician</u>. A doctor of medicine who is:
- Duly qualified;
- Licensed in the United States of America; and
- Performing within the scope of his or her license.

A Physician must not be: you, the Insured; the brother, sister, parent, spouse or child of either you or the Insured; or any spouse of any of the above.

<u>Terminal Illness</u>. Illness or physical condition that results in the Insured having a life expectancy of 12 months or less.

**Effective Date**

This rider is effective on the date shown under CERTIFICATE, PREMIUM, AND RIDER INFORMATION in the CERTIFICATE INFORMATION section of the certificate.

**Written Request and Proof of Terminal Illness**

We will require a Written Request for the Accelerated Benefit. Before we pay the Accelerated Benefit, we will require that you provide us with proof satisfactory to us that the Insured has a Terminal Illness. This proof will include, but is not limited to, certification by a Physician who provides medical care to the Insured in connection with the Insured's Terminal Illness. We reserve the right to obtain a second medical certification, at our expense, from a Physician selected by us.

**Benefit**

If we approve your request, we will pay the Accelerated Benefit to you in a lump sum. No further benefit under this rider will be paid. If the Insured dies before the Accelerated Benefit is paid, the entire death benefit will be paid in accordance with the certificate; no benefit will be paid under this rider.

FGL AB5-C (3-96)

# Accelerated Benefit Rider *(Cont'd)*

**Benefit *(Cont'd)***

The Accelerated Benefit is:
- The value of the Accelerated Amount discounted over a 12 month period; less
- An administrative fee of $350; less
- A portion of any unpaid loans and loan interest, if any, on the date we approve your request for the Accelerated Benefit. (That portion is determined by dividing the Accelerated Amount by the Eligible Amount, and then multiplying that percentage by the sum of unpaid loans and loan interest.)

We will consider the following when we discount the Accelerated Amount:
- The expected future monthly premiums for the certificate; and
- Interest at an annual rate declared by us which will not be higher than the greater of:
  - The current yield on 90-day United States Treasury bills; or
  - The current maximum statutory adjustable certificate loan interest rate.

**Adjustments to Certificate Values**

Payment of the Accelerated Benefit does not terminate the certificate. The following amounts under the certificate will be reduced in the same proportion that the Accelerated Amount bears to the Eligible Amount:
- The Face Amount;
- The account value or cash value, as applicable; and
- Any unpaid loans and load interest.

Premiums will be reduced to reflect the reduced Face Amount.

In addition, we will reduce the monthly amount payable under any rider which is a part of the certificate and which provides benefits for disability.

We will issue revised CERTIFICATE INFORMATION page(s) reflecting changes due to payment of the Accelerated Benefit.

**Conditions**

Payment of the Accelerated Benefit is subject to the following conditions:
- Any amount needed to keep the certificate from terminating must be paid before we approve your Written Request.
- We will require the written consent (on a form we accept) of any joint Owner or Irrevocable Beneficiary having an interest in the certificate.
- The certificate must not be assigned to any person, except to us, as security for a loan.

Payment of the Accelerated Benefit is not meant to allow third parties to cause you to involuntarily invade the death benefit ultimately payable to the named Beneficiary. Therefore, you are not eligible for this benefit:
- If you are required by law to use this benefit to meet the claims of creditors, whether in bankruptcy or otherwise; or
- You are required by a government agency to use this benefit in order to apply for, obtain, or keep a government benefit or entitlement.

# Accelerated Benefit Rider *(Cont'd)*

| | |
|---|---|
| **Nonparticipating** | Dividends are not payable. |
| **Rider Termination** | This rider will end at the earliest of the following events:<br>• The certificate terminates.<br>• The Accelerated Benefit is paid.<br>• Your Written Request. |
| **Confirmation of Changes** | We will mail to your last known address confirmation of any changes to this rider's benefits, including the effective date of any change. |

*Signed for the Company.*

## Fidelity and Guaranty Life Insurance Company

*[signature]*

President

FGL AB5-C (3-96)                                Page 3

# Return of Premium Rider

*This rider is part of the certificate to which it is attached. The premium is shown under CERTIFICATE, PREMIUM, AND RIDER INFORMATION in the CERTIFICATE INFORMATION section of the certificate. Except as stated in this rider, all other certificate provisions apply.*

| | |
|---|---|
| **Additional Definitions** | <u>Covered Dependent</u>. The Covered Dependent(s) as shown under CERTIFICATE, PREMIUM, AND RIDER INFORMATION in the CERTIFICATE INFORMATION section of the certificate. |
| **Effective Date** | This rider is effective on the certificate's Date of Issue. |
| **Benefit** | While this rider is in effect, we will pay a Return of Premium benefit if the certificate ends after the fifth certificate year and on or before the initial Expiration Date. The amount of the Return of Premium benefit will be the total of premiums paid on the certificate (including any rider premiums) times the percentage shown below. The percentage differs depending upon the term period shown under CERTIFICATE, PREMIUM, AND RIDER INFORMATION in the CERTIFICATE INFORMATION section of the certificate. The Return of Premium benefit will be reduced by any amount paid under any rider attached to the certificate, such reduction not to exceed the Return of Premium benefit. However, no Return of Premium benefit is payable if any Insured or Covered Dependent dies while this rider is in effect. |

If the Return of Premium benefit is greater than the amount of insurance in effect on the certificate, the amount of insurance will be increased to be 105% of the Return of Premium benefit.

| end of certificate year | 15-year certificate term | 20-year certificate term | 25-year certificate term | 30-year certificate term |
|---|---|---|---|---|
| 1-5 | 0% | 0% | 0% | 0% |
| 6 | 5% | 3% | 2% | 1% |
| 7 | 10% | 6% | 4% | 2% |
| 8 | 15% | 9% | 6% | 3% |
| 9 | 20% | 12% | 8% | 4% |
| 10 | 25% | 15% | 10% | 5% |
| 11 | 40% | 22% | 13% | 7% |
| 12 | 55% | 29% | 16% | 9% |
| 13 | 70% | 36% | 19% | 11% |
| 14 | 85% | 43% | 22% | 13% |
| 15 | 100% | 50% | 25% | 15% |
| 16 | | 60% | 30% | 17% |
| 17 | | 70% | 35% | 19% |
| 18 | | 80% | 40% | 21% |
| 19 | | 90% | 45% | 23% |
| 20 | | 100% | 50% | 25% |
| 21 | | | 60% | 30% |
| 22 | | | 70% | 35% |
| 23 | | | 80% | 40% |
| 24 | | | 90% | 45% |
| 25 | | | 100% | 50% |
| 26 | | | | 60% |
| 27 | | | | 70% |
| 28 | | | | 80% |
| 29 | | | | 90% |
| 30 | | | | 100% |

# Return of Premium Rider *(Cont'd)*

| | |
|---|---|
| **New Certificate Benefit Option** | If you terminate this certificate, any benefit payable under the Return of Premium rider may be transferred to a new policy, provided the Return of Premium rider is part of the new policy. The new benefit will be the greater of:<br>• The sum of the premiums paid under this certificate and the new policy, multiplied by the percentage shown in the table (under this rider's **Benefit** provision) for the policy term and the then current number of years the new policy has been in effect; or<br>• The Return of Premium benefit payable under this certificate if a new policy is not purchased. |
| **Nonforfeiture Options** | After the 5th certificate year and if the certificate lapses as provided in the certificate's Grace Period provision, the certificate will have a cash value equal to the Return of Premium benefit. If not more than 60 days have passed since the unpaid premium's due date, one of two options will be available:<br>• <u>Cash Surrender</u> - The certificate may be surrendered for its cash value. The cash value is equal to the Return of Premium benefit. We will require your Written Request and return of the certificate or a certification (on a form we accept) stating that the certificate has been lost or destroyed.<br>• <u>Extended Level Term Insurance</u> - If no option is selected, this option will be automatic. Under this option, you may continue the certificate as nonparticipating extended level term insurance. The term period will start on the due date of the unpaid premium. That period will be determined by applying the cash value as a net single premium for such insurance. At the end of that period, the insurance will terminate and there will be no cash value remaining. |
| **Surrender of Insurance Under Extended Level Term Insurance Option** | Any insurance provided under the Extended Level Term Insurance Option may be surrendered for its cash value. The cash value will equal the net single premium for the insurance remaining. If such surrender occurs within 3 days after a certificate anniversary, the value will not be less than the cash value on that anniversary.<br><br>We will require:<br>• Your Written Request.<br>• Return of the certificate or a certification (on a form we accept) stating that the certificate has been lost or destroyed. |
| **Deferral of Cash Value Payment** | We reserve the right to defer payment of the cash value for up to 6 months after we receive your Written Request. We will pay interest at a rate not less than the minimum rate required by state law, if the deferral period is 30 days or more. |
| **Basis of Certificate Values** | Cash value amounts equal or exceed the values based on:<br>• 1980 CSO Nonsmoker and Smoker Tables;<br>• Age Last Birthday;<br>• Interest rate of 5.75% per year;<br>• Death occurring at the end of the certificate year<br><br>Extended Level Term Insurance Option is based on:<br>• 1980 CET Nonsmoker and Smoker Tables;<br>• Age Last Birthday;<br>• Interest rate of 5.75% per year;<br>• Death occurring at the end of the certificate year<br><br>Certificate values equal or exceed those required by the state in which this certificate is delivered. A detailed statement of the method used to compute those values has been filed with the insurance department of that state. |

# Return of Premium Rider *(Cont'd)*

| | |
|---|---|
| **Nonparticipating** | Dividends are not payable. |
| **Rider Termination** | This rider will end at the earliest of the following events:<br>• Expiration Date of the initial term period.<br>• Any Nonforfeiture Option goes into effect.<br>• Your Written Request.<br>• The certificate terminates.<br>• Any Other Insured dies. |
| **Confirmation of Changes** | We will mail to your last known address confirmation of any changes to this rider's benefit, including the effective date of any change. |

*Signed for the Company.*

Fidelity and Guaranty Life Insurance Company

President

# Fidelity & Guaranty Life Insurance Company
## Service Center

**P.O. Box 81497**
**Lincoln, NE 68501-1497**

## DELIVERY REQUIREMENT(S)
### October 12, 2005

Policy Number:  L0531119.  Sean K Keel, the following requirements must be met within 30 days to activate your policy.  If you have any questions feel free to call our Service Center at 1-888-513-8797.

**Policy is being issued with a quarterly premium of  $378.30.**

**Need initial premium in the amount of $378.30.**

GROUP LEVEL TERM LIFE INSURANCE CERTIFICATE

TERM LIFE

Premiums are payable in advance while the Insured is alive and until the Expiration Date of each term.  After the Premium Guarantee Period, each renewal premium will not be more than the Guaranteed Maximum Total Premium shown in the TABLE OF ANNUAL RENEWAL PREMIUMS.  Renewable to age 95.  Death benefit is payable if Insured dies before the Expiration Date and while this certificate is in effect. Nonparticipating:  dividends are not payable.

# Paramedical Supplement to Application

Insurer

☒ Fidelity and Guaranty Life Insurance Company    ○ Americum Life and Annuity Insurance Company

Insured

| First Name | Middle Initial | Last Name |
|------------|----------------|-----------|
| Sean | R | Keal |

| Birth Date | Birth Place |
|------------|-------------|
| 06 - 14 - 71 | CA |

## Medical History Questions

1. Have you ever been treated for or diagnosed with:

| | | | |
|---|---|---|---|
| a) | Any heart disease, heart attack, chest pain, high blood pressure, high cholesterol, murmur, palpitations, or any other disorder of the heart or blood vessels? | ○ Y | ☒ N |
| b) | Any circulatory disease, stroke, TIA, aneurysm, or any other disorder of the veins or arteries? | ○ Y | ☒ N |
| c) | Any breathing or lung disorder, COPD, asthma, bronchitis, sleep apnea, or emphysema? | ○ Y | ☒ N |
| d) | Diabetes, disorder of the immune system, blood disorder, or disorder of the glands? | ○ Y | ☒ N |
| e) | Cancer, tumor, or cysts? | ○ Y | ☒ N |
| f) | Depression, anxiety, dementia, Alzheimer's, or any other mental or nervous disease or disorder? | ○ Y | ☒ N |
| g) | Hepatitis, gastritis, colitis, or any disease or disorder of the liver, stomach, pancreas, or intestines? | ○ Y | ☒ N |
| h) | Any disease or disorder of the kidneys, bladder, prostate, urinary, or reproductive systems? | ○ Y | ☒ N |
| i) | Arthritis or any disease or disorder of the muscles (to include strains or sprains), tendons, bones, spine, back, or joints? | ○ Y | ☒ N |
| j) | Any disease or disorder of the skin, eyes, or ears? | ○ Y | ☒ N |
| k) | Acquired Immune Deficiency Syndrome (AIDS), AIDS related Complex (ARC) or positive test results indicating the presence of the AIDS virus? | ○ Y | ○ N |
| 2. | Are you currently prescribed any medication? | ○ Y | ○ N |
| 3. | Have you been prescribed medication in the past 5 years not previously mentioned? | ○ Y | ☒ N |
| 4. | In the past 10 years, have you: | | |
| a) | Been hospitalized or had surgery? | ○ Y | ☒ N |
| b) | Had any electrocardiograms, x-rays, laboratory tests, treatment, or surgery, or been advised to and not done so? | ○ Y | ☒ N |
| c) | Been recommended to have any test, treatment, or surgery, which has not been performed? | ○ Y | ☒ N |
| d) | Had any illness, disease, or injury that is not included in other answers? | ○ Y | ○ N |
| 5. | Has any parent, brother, or sister died from or had any occurrence of cancer, heart disease, diabetes, or any hereditary disease prior to age 60? | ○ Y | ☒ N |
| 6. | Have you smoked cigarettes, pipes, or cigars, used snuff, chewed tobacco, or used any nicotine-based products such as the patch, or gum? If yes, please detail the type(s) of tobacco product used and date of last use below. | ○ Y | ☒ N |
| 7. | In the past 10 years, have you sought or received treatment, advice, or counseling for the use of alcohol? | ○ Y | ☒ N |
| 8. | Have you ever sought or received treatment, advice, or counseling for the use of any narcotic, barbiturate, stimulant, amphetamine, hallucinogenic, street, or prescription drugs? Have you ever been arrested for the use or possession of such drug or are you currently using these drugs? | ○ Y | ☒ N |
| 9. | Within the past 10 years, have you made a claim or received benefits for disability or worker's compensation as a result of a sickness or injury? | ○ Y | ☒ N |

CONTINUED

## Paramedical Supplement to Application - Continued

10. Personal Physician's Name and Address: _Judith walsh_ _2355 Sutter_
_San Francisco, CA 94115_

Date and Reason Last Consulted: _about 1 yr ago - Routine_
_Check up_ _- well_

What treatment was given or medication prescribed? _None_

11. Give details of "Yes" answers. State question number and include where appropriate: diagnosis, date, duration, names and addresses of all attending physicians and medical facilities: _____

I have read the questions and answered on this Paramedical Supplement to Application. The statements made herein are complete, true and correctly recorded.

I agree that a copy of this Paramedical Supplement to Application will form a part of any policy or certificate issued, and that no agent or medical examiner can pass upon insurability or modify any policy or certificate issued by the Company.

_San Francisco, CA_        _8-27-05_

Signed at (City and State) on (Date)

_____ ( Ileana   Gutiérrez )
Witness (Medical Examiner)

_P. Den Lau_
Signature of Proposed Insured age 15 or more; otherwise Parent or Legal Guardian of Proposed Insured

# Life Insurance Application (page 1 of 8)

FAMILY DIRECT
INSURANCE SERVICES

| INSURER | |
|---|---|
| ● Fidelity & Guaranty Life Insurance Company    ○ Americom Life & Annu | L0531119 |

## PRIMARY INSURED

Name (First, M.I., Last)
**Sean K. Keel**

Home Address
**1450 Oakdale Avenue   San Francisco, CA  94124**

| Social Security No. | Sex | Marital Status | Date of Birth | Place of Birth | Height (ft., in.) | Weight (lbs.) |
|---|---|---|---|---|---|---|
| **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** | **M** | **Married** | **06-14-71** | **CA** | **5' 10"** | **200** |

| Currently Employed? | Occupation and Duties | Place of Employment | Years w/ Current Employer |
|---|---|---|---|
| ● Yes   ○ No | **Construction** | **Pacific Erectors** | **5** |

| Earned Annual Income (from last year's W-2) | Drivers License Number and Issue State |
|---|---|
| **60000** | **A6215539**                        **CA** |

| Daytime Phone | Evening Phone | Best Time to Call | Email Address |
|---|---|---|---|
| **415   671-0162** | **415   368-8034** | **2:00 pm** | |

## OTHER INSURED

Name (First, M.I., Last)                                       Relationship to Primary Insured

Home Address

| Social Security No. | Sex | Marital Status | Date of Birth | Place of Birth | Height (ft., in.) | Weight (lbs.) |
|---|---|---|---|---|---|---|
| | | | | | | |

| Currently Employed? | Occupation and Duties | Place of Employment | Years w/ Current Employer |
|---|---|---|---|
| ○ Yes   ○ No | | | |

| Earned Annual Income (from last year's W-2) | Drivers License Number and Issue State |
|---|---|
| | |

| Daytime Phone | Evening Phone | Best Time to Call | Email Address |
|---|---|---|---|
| | | | |

## OWNER(S)

*(UNLESS OTHERWISE NOTED, THE OWNER WILL BE THE PRIMARY INSURED.)*

Name (First, M.I., Last)                                       Relationship to Primary Insured

Home Address

Home Phone                                       Email Address

Birth Date                    Social Security No. or Tax I.D. No.

## BENEFICIARY DESIGNATION - Primary Insured Coverage

*FOR EACH BENEFICIARY, LIST FULL NAME, RELATIONSHIP TO PRIMARY INSURED AND % SHARE.*

| Primary Beneficiary(ies) | % | Contingent Beneficiary(ies) | % |
|---|---|---|---|
| **Rosa Rivera-Keel, Spouse** | | **All surviving children of insured equal shares** | |

## BENEFICIARY DESIGNATION - Other Insured Coverage

*Unless otherwise noted in the Additional Information section, the beneficiary of other persons proposed for coverage will be the Primary Insured.*

FIDELITY & GUARANTY LIFE INSURANCE COMPANY, Baltimore, Maryland ● AMERICOM LIFE & ANNUITY INSURANCE COMPANY, Houston, Texas

ADMIN 4952 (04-2003)  FDIS Reg# 05-898-04847

# Life Insurance Application (page 2 of 8)

## POLICY/CERTIFICATE INFORMATION

**Product Name:**
Sav Select Term 20/20 ROP

**Amount of Insurance**
$ 620,000

**Initial Premium**
$

�● Nontobacco
○ Tobacco

**TERM:**
● Level  ○ Decreasing

**Term Period (Number of Years)**
20

**Premium Guarantee Period**
20

**UNIVERSAL LIFE:**
○ Level  ○ Increasing

**Planned Premium**
$

**Initial Allocation Percentage (for equity-indexed UL products only)**
Equity Indexed Interest Option _____%    Fixed Interest Option _____%

**Mode of Payment** (For bank draft, complete Bank Draft Plan authorization, and initial payment required.)

○ Annual
○ Semi-Annual
○ Credit Card (See Instructions Page for current company practice)

☒ Quarterly
○ Monthly Bank Draft

○ Bi-Weekly Bank Draft
○ Other _____

**Account Number**

○ Visa  ○ Mastercard

**Payment in Exchange for Conditional Receipt**
$

**Expiration Date**

**Signature to Authorize Credit Card Charge**

*(No coverage will be effective except in accordance with the terms of the Receipt and unless full initial modal premium payment is submitted.)*

## ADDITIONAL BENEFITS - Primary Insured

*(Not all riders are available with all products or in all states)*

○ Accelerated Benefit Rider

○ Accidental Death Benefit Rider    Amount: $ _____

○ Critical Illness Rider    Amount: $ _____    *Supplemental questionnaire required.*

○ Disability Income Rider
    Class: _____
    Monthly Payout: $ _____
    ○ 3 month elimination, 2 year benefit
    ○ 6 month elimination, 5 year benefit

● Return of Premium Rider

○ Ultimate Income Option Rider
    Initial Lump Sum: $ _____    *Illustration required.*
    Monthly Income of: $ _____
    for _____ years.
    Final Lump Sum: $ _____

○ Waiver of Monthly Deduction Rider (UL only)

○ Waiver of Premium Rider (Term only)

○ Child Rider    Amount: $ _____    *Supplemental questionnaire required.*

○ Other: _____

# Life Insurance Application (page 3 of 8)

## OTHER INSURED BENEFITS
### (Not all riders are available with all products or in all states)

○ Other Insured/Dependent Rider    Amount: $ _____     *For term products, term period must*
   Term Period: _____ yrs.    *match base policy term period.*

○ Disability Income Rider    Class: _____
   Monthly Payout: $ _____
   ○ 3 month elimination, 2 year benefit
   ○ 6 month elimination, 5 year benefit

○ Other: _____

## EXISTING INSURANCE

List existing, personal and business life insurance, disability income, annuity, and long term care coverage. Write NONE if there is no coverage.

| Insurance Company | Policy Type | Policy # | Life Insurance or Disability Income Amount | ADB Amount | Year Issued |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

|  | Primary Insured | Other Insured |
|---|---|---|
| 1. Will this policy/certificate, if issued, replace, or change any existing life insurance or annuity? If "Yes", circle which policy/certificate(s) listed above are to be replaced or changed. Amount being replaced $_____ | ○ Y ● N | ○ Y ○ N |
| 2. Is any other insurance application pending? (If yes, provide details): | ○ Y ● N | ○ Y ○ N |
| 3. Have you had any insurance application declined, postponed, rated, modified, or refused for reinstatement? (If yes, provide details): | ○ Y ● N | ○ Y ○ N |

FIDELITY & GUARANTY LIFE INSURANCE COMPANY, Baltimore, Maryland • AMERICOM LIFE & ANNUITY INSURANCE COMPANY, Houston, Texas

# Life Insurance Application (page 4 of 8)

| PERSONAL HISTORY QUESTIONS | Primary Insured | Other Insured |
|---|---|---|
| 1. Are you a citizen of the United States? If "No", what is your citizenship? Immigration status? Type of visa? | ● Y ○ N | ○ Y ○ N |
| 2. Have you traveled or resided outside the United States or Canada within the past 2 years or plan to do so within the next 2 years? | ○ Y ● N | ○ Y ○ N |
| 3. Have you been convicted of a felony or are currently on parole for any offense? | ○ Y ● N | ○ Y ○ N |
| 4. In the past 10 years have you been convicted of DWI/DUI? In the past 5 years have you had any speeding tickets or other driving violations? | ○ Y ● N | ○ Y ○ N |
| 5. In the past 5 years have you participated in ballooning, bungee jumping, cliff diving, hang gliding, motorized racing, parachuting, mountain or rock climbing, skin or scuba diving, or any similar avocation? | ○ Y ● N | ○ Y ○ N |
| 6. In the past 5 years have you flown as a pilot, student pilot, or crew member of an aircraft? | ○ Y ● N | ○ Y ○ N |
| 7. In the past 10 years have you ever sought or received treatment, advice, or counseling for the use of alcohol? | ○ Y ● N | ○ Y ○ N |
| 8. Have you ever sought or received treatment, advice, or counseling for the use of any narcotic, barbiturate, stimulant, amphetamine, hallucinogenic, street, or prescription drugs? Have you ever been arrested for the use or possession of such drug or are you currently using these drugs? | ○ Y ● N | ○ Y ○ N |
| 9. Within the past 10 years have you made a claim or received benefits for disability or worker's compensation as a result of a sickness or injury? | ○ Y ● N | ○ Y ○ N |
| 10. Within the past 7 years, have you filed for bankruptcy? | ○ Y ● N | ○ Y ○ N |
| 11. (Only required when applying for HomeCertain term insurance) In the past 13 months have you contracted for a home mortgage, or refinanced an existing mortgage? If the answer is yes, please list the amount of the mortgage or refinancing, and the name and address of the lending institution. | ○ Y ○ N | ○ Y ○ N |

*Detail all Yes answers below (additional information may be required).*
*In addition, complete questionnaires for YES answers to Questions 2, 5, and 6.*

**Primary Insured**

Client earns 60,000 & wife earns $65,000 combined income $122,000

**Other Insured**

FIDELITY & GUARANTY LIFE INSURANCE COMPANY Baltimore, Maryland • AMERICOM LIFE & ANNUITY INSURANCE COMPANY Houston, Texas

# Life Insurance Application (page 5 of 8)

**PERSONAL PHYSICIAN INFORMATION – Primary Insured**

*(Provide full name, address, and phone number of personal physician. Please write "NONE" if primary insured does not have a personal physician.)*

Name

Judith Welch M.D.

Date Last Seen

Address

Phone

Reason for Last Visit

Result of Last Visit

**PERSONAL PHYSICIAN INFORMATION – Other Insured**

*(Provide full name, address, and phone number of personal physician. Please write "NONE" if primary insured does not have a personal physician.)*

Name

Date Last Seen

Address

Phone

Reason for Last Visit

Result of Last Visit

# Life Insurance Application (page 6 of 8)

## MEDICAL HISTORY QUESTIONS

| | Primary Insured | Other Insured |
|---|---|---|
| 1. Have you ever been treated for or diagnosed with: | | |
| a) Any heart disease, heart attack, chest pain, high blood pressure, high cholesterol, murmur, palpitations, or any other disorder of the heart or blood vessels? | ○ Y ● N | ○ Y ○ N |
| b) Any circulatory disease, stroke, TIA, aneurysm, or any other disorder of the veins or arteries? | ○ Y ● N | ○ Y ○ N |
| c) Any breathing or lung disorders, COPD, asthma, bronchitis, sleep apnea, or emphysema? | ○ Y ● N | ○ Y ○ N |
| d) Diabetes, disorder of the immune system, blood disorder, or disorder of the glands? | ○ Y ● N | ○ Y ○ N |
| e) Cancer, tumor, or cyst? | ○ Y ● N | ○ Y ○ N |
| f) Depression, anxiety, dementia, Alzheimer's, or any other mental or nervous disease or disorder? | ○ Y ● N | ○ Y ○ N |
| g) Hepatitis, gastritis, colitis, or any disease or disorder of the liver, stomach, pancreas, or intestines? | ○ Y ● N | ○ Y ○ N |
| h) Any disease or disorder of the kidneys, bladder, prostate, urinary, or reproductive systems? | ○ Y ● N | ○ Y ○ N |
| i) Arthritis or any disease or disorder of the muscles (to include strains or sprains), tendons, bones, spine, back, or joints? | ○ Y ● N | ○ Y ○ N |
| j) Any disease or disorder of the skin, eyes, or ears? | ○ Y ● N | ○ Y ○ N |
| k) Acquired Immune Deficiency Syndrome (AIDS), AIDS Related Complex (ARC), or positive test results indicating the presence of the AIDS virus? | ○ Y ● N | ○ Y ○ N |
| 2. Are you currently prescribed any medication? | ○ Y ● N | ○ Y ○ N |
| 3. Have you been prescribed medication in the past 5 years not previously mentioned? | ○ Y ● N | ○ Y ○ N |
| 4. In the past 10 years, have you: | | |
| a) Been hospitalized or had surgery? | ○ Y ● N | ○ Y ○ N |
| b) Had any electrocardiograms, x-rays, laboratory tests, treatments, or procedures? | ○ Y ● N | ○ Y ○ N |
| c) Been recommended to have any test, treatment, or surgery which has not been performed? | ○ Y ● N | ○ Y ○ N |
| d) Had any illness, disease, or injury that is not included in other answers? | ○ Y ● N | ○ Y ○ N |
| 5. Has any parent, brother, or sister died from or had any occurrence of cancer, heart disease, diabetes, or any hereditary disease prior to age 60? | ○ Y ● N | ○ Y ○ N |
| 6. Have you smoked cigarettes, pipes, or cigars, used snuff, chewed tobacco, or used any nicotine based product such as patch or gum? If yes, please detail the type(s) of tobacco product used and date of last use below. | ○ Y ● N | ○ Y ○ N |

*Detail all Yes answers (include name of treating physician, diagnosis, date of diagnosis, and location of medical records)*

**Primary Insured** _____

_____

_____

_____

_____

**Other Insured** _____

_____

_____

_____

# Life Insurance Application (page 7 of 8)

## AUTHORIZATION

I have read the questions and answers on this application. The statements made in this application are: complete; true; and correctly recorded. I agree that: a copy of this application will form a part of any certificate/policy issued; and that no agent can pass on insurability or modify any certificate issued by the Insurer. I also agree that, except as provided in this application's Receipt, if issued, no insurance will take effect unless and until both of the following conditions are satisfied during each proposed insured's lifetime and while each proposed insured's health is as stated in this application: (1) this certificate/policy is delivered to and accepted by the Owner; and (2) the full initial premium for the mode of payment chosen is paid at our Home Office. I acknowledge that I have received, read and understand the notices required by: the Medical Information Bureau, Inc.; and the Federal Fair Credit Reporting Act regarding investigative consumer reports.

I authorize any licensed physician, medical practitioner, hospital, clinic, the Veterans Administration, laboratory or other medical or medically-related facility, the Medical Information Bureau, Inc., insurance companies, a consumer reporting agency, prescription records, Pharmacy Benefit Manager, and my employer to give to the Insurer, its reinsurers, or other designee, medical and other information which may be pertinent to the evaluation regarding me or any member of my family who is applying for life insurance.

I also authorize the Insurer to obtain an investigative consumer report on me or on any member of my family who is also applying for life insurance. I understand that I am entitled to be interviewed by any consumer reporting agency which may be requested to prepare such a report as long as I can reasonably be contacted during normal business hours. Check if interview requested: ○

I understand that if my coverage includes the Accelerated Benefit Rider and I am later diagnosed with a terminal illness as defined in the rider, I may receive up to 50% of the certificate or policy's death benefit. Since I would receive a portion of my benefits early, the amount payable at the time of my death will be reduced. There is no premium charged for this rider. I understand that receipt of benefits may be taxable, and that the Insurer recommends consultation of a tax advisor prior to exercising this benefit.

I further understand that if I am purchasing a HomeCertain term life product, the mortgage information I supplied will be relied upon to determine my insurability for that product, in conjunction with my health information. As such, inaccurate information about my mortgage may result in a denial, rating, or rescission of my insurance coverage.

I authorize the Insurer and/or its reinsurer(s) to release information in my file to other insurance companies to which I may apply for life or health insurance coverage or to which a claim may be submitted.

This Authorization will be valid from the date signed for a period of 30 months; a photographic copy of this Authorization will be as valid as the original; I, or any of our representatives are entitled to receive a copy of this Authorization.

I understand that the information obtained by use of this authorization will be used to determine eligibility for insurance and/or benefits.

**Certification:** Under the penalties of perjury, I certify that my Social Security or Tax Identification Numbers provided on this form are true, correct and complete.

San Francisco, CA _____ 8/27/08 _____ Sean K. Keel

Signed at (City and State) on (Date)

Signature of Primary Insured age 15 or more

Signature(s) of Additional Insured(s) age 15 or more

Signature of Owner(s) (if not the Primary Insured or if Primary Insured is less than age 18)

## AGENT CERTIFICATION

1) I have asked the questions contained in this application of the Insured(s) and Owner and duly recorded the answers; 2) to the best of my knowledge there is nothing affecting the insurability of any persons proposed for insurance as stated in this application; 3) if the initial premium was paid with the application, I have remitted it to the Insurer and delivered a Conditional Receipt to the Owner; 4) if Disclosure Statements are required by the state, I have given them to the applicant; 5) I have witnessed the signatures on this application.

To the best of my knowledge, this application ○ does replace ● does not replace existing life insurance or annuities.

If so, will this replacement be considered a 1035 Exchange? ○ Yes ○ No

Signature of Agent _____ Patrice A. Pfitzer _____ Date 9-19-05

Print Agent's Name:    Agent Number

**Patrice Pfitzer**    000204836

Agent's Phone Number    Agent's Fax Number    Agent's Email Address

**(916) 932-3210**    **(916) 932-3269**    ppfitzer@familydirect.com

If Bank Representative:    Name of Financial Institution    Branch #    Employee #

FIDELITY & GUARANTY LIFE INSURANCE COMPANY, Baltimore, Maryland ● AMERICOM LIFE & ANNUITY INSURANCE COMPANY, Houston, Texas



Exhibit F

Washington Mutual - Payment Confirmation

**Washington Mutual, Inc.®**

## Payment Confirmation

\* PLEASE NOTE - Your Initiation Date(s) have been adjusted to valid Init
(s). If this does not meet your needs, you must edit your payment(s).

0000000004        FREE               F+G    $378.30   1/22/2006\*
                 CHECKING/#1853702760

EQUAL HOUSING LENDER

© Copyright 1998 - 2006, Washington Mutual, Inc. All Rights Reserved.



Exhibit G

**FIDELITY AND GUARANTY LIFE INSURANCE COMPANY SERVICE CENTER**
P.O. Box 81497
Lincoln, NE  68501-1497
1.888.513.8797

01/27/2006

SEAN K KEEL
1450 OAKDALE AVE
SAN FRANCISCO, CA  94124

Re:    Policy Number: L0531119

Dear SEAN K KEEL:

We are in receipt of your recent request to reopen the above referenced policy.  We regret to inform you that your policy has been closed as incomplete due to outstanding requirements.

If it is your intent to reapply for coverage, please contact your agent so that a new application can be submitted on your behalf.  If applicable, a refund will be mailed under separate cover.

If you have any questions, or require further assistance, please do not hesitate to contact our Policyholder Services Department at .

Sincerely,


KATHLEEN MCCOY
Retransaction Department

FGL107

Exhibit H

SEAN K  KEEL
1450 OAKDALE AVE
SAN FRANCISCO   , CA 94124

L0531119

**No.** 7465843  PD02

| DATE | ACCT. NO. | DESCRIPTION | DR. | CR. |
|------|-----------|-------------|-----|-----|
| 02/07/2006 | 220010 | POLICY SUSPENSE      L0531119 | 378.30 | |

Please retain this portion for your records

Fidelity & Guaranty Life Insurance Company  PO Box 81497  Lincoln, NE  68501

🔒 THE FACE OF THIS DOCUMENT HAS A GREEN BACKGROUND-NOT A WHITE BACKGROUND, A TRUE WATERMARK AND VISIBLE FIBERS 🔒

**FIDELITY AND GUARANTY LIFE INSURANCE COMPANY**
P.O. Box 1137 Baltimore, MD 21203-1137

Bank of America
Northbrook, IL

**No.**  **7465843**

70-2328
719 CA

Void if Not Cashed Within 60 Days

Date:  February 07, 2006

$\$********378.30$

Pay    Three Hundred Seventy-Eight and 30/100 ---------------------------------------------------------------- Dollars

To The
Order Of

SEAN K KEEL
1450 OAKDALE AVE
SAN FRANCISCO, CA  94124

John M. Vern
Authorized Signature

⑈"7465843"⑈ ⑆071923284⑆: 8765015791"⑈

*FEDERAL RESERVE BANK REGULATION CC

Security features on this document include a
Micro-Print Border and Security Screen.
Absence of these features may indicate alteration.

DO NOT SIGN / WRITE / STAMP BELOW THIS LINE
FOR FINANCIAL INSTITUTION USAGE ONLY*

X

ENDORSE HERE

Exhibit I

ROSA RIVERA KEEL
1450 Oakdale Avenue, San Francisco, CA 94124

(415) 368-8034 cellular

February 9, 2006

Fidelity and Guaranty Life Service Center
421 South 9th Street
Suite 222
Lincoln, NE 68508

Re: Certificate No: L0531119

Dear Benefits Coordinator:

I am writing to you regarding the above-policy and I enclose a copy for your
review of same. My spouse, Sean K. Keel passed away on January 21, 2006. His death
occurred during the policy grace period. Please forward the necessary forms to open a
death benefit claim.

Sincerely,

Rosa Rivera Keel

Enclosures

Cc: Patrice Pfitzer
Family Direct Insurance Services, Inc.

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Fidelity & Guaranty Life
SVCO CTR
421 South 9th st, Ste 222
Lincoln, NE 68508

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X David A. Orie

☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☑ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)    7005 3110 0001 3192 4214

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**CERTIFIED MAIL... RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

LINCOLN NE 68508

| | | |
|---|---|---|
| Postage | $1.83 | |
| Certified Fee | $2.40 | 0010 |
| Return Receipt Fee (Endorsement Required) | $1.85 | 07 Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | $0.00 | |
| Total Postage & Fees | $6.08 | 02/10/2006 |

Sent To F & G
Street, Apt. No.; or PO Box No. 421 South 9th St
City, State, ZIP+4 Ste 222, Lincoln, NE 68508

7005 3110 0001 3192 4214

Exhibit D

CIV-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address):* | TELEPHONE NO.: | FOR COURT USE ONLY |
|---|---|---|

Frank S. Moore SBN 158029
Law Offices of Frank S. Moore, APC
1374 Pacific Avenue
San Francisco, California 94109
TELEPHONE NO.: 415-292-6091

ATTORNEY FOR *(Name):* ROSA RIVERA KEEL

**F I L E D**
San Francisco County Superior Court
MAR - 1 2007
GORDON PARK-LI, Clerk

Deputy Clerk

Insert name of court and name of judicial district and branch court, if any:
Superior Court for the County of San Francisco

PLAINTIFF/PETITIONER: ROSA RIVERA KEEL

DEFENDANT/RESPONDENT: PATRICE ANN PFITZER, et al.

**REQUEST FOR DISMISSAL**
☐ Personal Injury, Property Damage, or Wrongful Death
   ☐ Motor Vehicle  ☑ Other
☐ Family Law
☐ Eminent Domain
☐ Other *(specify):*

CASE NUMBER:
CGC-06-457259

- A conformed copy will not be returned by the clerk unless a method of return is provided with the document. -

1. TO THE CLERK: Please dismiss this action as follows:
   a. (1) ☐ With prejudice  (2) ☑ Without prejudice
   b. (1) ☑ Complaint  (2) ☐ Petition
      (3) ☐ Cross-complaint filed by *(name):*                on *(date):*
      (4) ☐ Cross-complaint filed by *(name):*                on *(date):*
      (5) ☐ Entire action of all parties and all causes of action
      (6) ☐ Other *(specify):**

Date: February 27, 2007

Frank S. Moore
(TYPE OR PRINT NAME OF ☑ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)

*If dismissal requested is of specified parties only of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

(SIGNATURE)
Attorney or party without attorney for:
☑ Plaintiff/Petitioner      ☐ Defendant/Respondent
☐ Cross - complainant

2. TO THE CLERK: Consent to the above dismissal is hereby given.**
   Date:

(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)

** If a cross-complaint-or Response (Family Law) seeking affirmative relief -is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581 (i) or (j).

(SIGNATURE)
Attorney or party without attorney for:
☐ Plaintiff/Petitioner      ☐ Defendant/Respondent
☐ Cross - complainant

*(To be completed by clerk)*
3. ☐ Dismissal entered as requested on *(date):*
4. ☐ Dismissal entered on *(date):*            as to only *(name):*
5. ☐ Dismissal not entered as requested for the following reasons *(specify):*

6. ☐ a. Attorney or party without attorney notified on *(date):*
      b. Attorney or party without attorney not notified. Filing party failed to provide
         ☐ a copy to conformed ☐ means to return conformed copy

Date:                              Clerk, by _____, Deputy

Page 1 of 1

Form Adopted for Mandatory use
Judicial Council of California
CIV-110 [Rev. January 1, 2007]

**REQUEST FOR DISMISSAL**

Code of Civil Procedure, § 581 et seq;
Cal Rules of Court, rule 3.1390
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

Exhibit E

p. 1

STATE OF CALIFORNIA

Steve Poizner, Insurance Commissioner

**DEPARTMENT OF INSURANCE**
CONSUMER SERVICES AND MARKET CONDUCT BRANCH
CONSUMER SERVICES DIVISION
300 SOUTH SPRING STREET, SOUTH TOWER
LOS ANGELES, CA 90013
WWW.INSURANCE.CA.GOV
CCB-012 P
Revised: 12/21/06

### REQUEST FOR ASSISTANCE

ROSA RIVERA-KEEL

Work Phone: ( ) UNEMPLOYED

Name
291 Guerrero Street

Home Phone: (415) 863-1745

Address
San Francisco, CA 94103

City          Zip

Before you file a complaint with the Department of Insurance, you should first contact the insurance company, agent or broker in an effort to resolve the issue(s). If you do not receive a satisfactory response, then complete this form, attach copies of any important papers that relate to your complaint and mail to address shown above.

Please be aware that a copy of this Request for Assistance and other documentation submitted by you may be provided to the insurance company, agent or broker unless you indicate that you do not want a copy of your correspondence forwarded by checking the box:

[ ] **Do _not_ forward a copy of the completed form and the documentation provided. However, please contact the insurance company and investigate the complaint on my behalf.**

1. Complete name of insurance company involved:
FAMILY DIRECT INSURANCE SERVICES, INCB

2. Type of Insurance:  Auto [ ]  Home [ ]  Life [X]  Health [ ]  Other [ ]

3. (a) Name of the policyholder if different from your name:
SEAN KENNETH KEEL

   (b) If a group policy, provide the group name:

4. Policy identification or certificate number:
L0531119

5. Claim number (if applicable)

6. Date loss occurred or began (if applicable) JANUARY 21, 2006

7. Broker/Agent (if applicable) 95630          Broker/Agent License number 000204836

Street address 870 GLENN DRIVE      City/State FOLSOME   /CA  Zip 95630

8. Have you contacted the company, agent or broker?  Yes [X]  No [ ]

If yes, state the date(s) and person(s) contacted 2/9/2006; F&GLSC, &P. PFITZER
(Provide copies of all correspondence)
(COMPLETE REVERSE SIDE)

9.   Have you reported this to any other governmental agency?  Yes _____ No ___X___
     If yes, please give:

     (1) Name of agency: _____

     (2) File number, if known: _____

10.  Have you previously written to the Department of Insurance about this matter?
     Yes ☐   No ☒  File number (if available) _____ Date _____

11.  Is there attorney representation in this matter?  Yes ☐  No ☒

12.  Is a lawsuit currently on-going or pending?  Yes ☐  No ☒  If yes, our ability to mediate this matter
     is limited, but we will investigate your inquiry for any regulatory issues.  We may defer the regulatory
     investigation until the finality of the litigation.  We ask that you still complete this form so we have a
     record of your issue.  Once the matter is concluded, we would welcome any information regarding
     violations of law by the insurer that you or your attorney are willing to provide.

13.  Briefly, describe your problem (use additional paper if needed):

     MY SPOUSE, SEAN KEEL TOOK OUT A LIFE INSURANCE POLICY FOR $640K AND WAS
     SUBSEQUENTLY KILLED AS SOMEONE CARJACKED HIS CAR.  INSURANCE CO.
     REFUSING TO PAY.  UNDER THE ADVISE OF TWO SEPARATE ATTORNEYS WHO INFOR
     MED ME TO PURSUE WITH YOUR DEPARTMENT BECAUSE COST AND FEES TO LITIGATE
     WOULD BE COSTLY FOR ME.  F&G/FDIS REFUSE TO PAY CLAIM & TOLD ME, 1. POLICY
     NOT IN EFFECT; 2. CUSTOMER REP. HUNG UP TELEPHONE WHEN I CALLED TO OPEN A
     DEATH CLAIM; 3. CALLED BROKER PATRICE TO INFORM HER OF INSURANCE CO.
     FAILURE TO ASSIST ME.  SHE TOLD ME THAT ALL DOCUMENTS HAD BEEN FORWARD
     TO INS., & THAT I NEEDED TO CALL BACK AND DEMAND THEY ASSIST ME WITH CLAIM.

14.  What do you consider to be a fair resolution to your problem?

     THE INSURANCE COMPANY HONOR THE POLICY AND PAY THE LIFE CLAIM.
     HUSBAND COMPLETED ALL PAPERWORK AND SUBMITTED THE PREMIUS.

_____          MAY 29 2007
        (Signature)                              (Date)

Exhibit F

STEVE POIZNER, *Insurance Commissioner*

STATE OF CALIFORNIA
DEPARTMENT OF INSURANCE
CONSUMER SERVICES AND MARKET CONDUCT BRANCH
RATING AND UNDERWRITING SERVICES BUREAU
300 SOUTH SPRING STREET
LOS ANGELES, CA 90013
www.insurance.ca.gov



June 11, 2007


ROSA RIVERA-KEEL
291 GUERRERO ST
SAN FRANCISCO, CA 94103


Our File Number: RUS-6260995
Regarding: OM FINANCIAL LIFE INSURANCE COMPANY

Dear MS RIVERA-KEEL:

Thank you for your request for assistance. I have been assigned to handle your
inquiry and have written to Om Financial (formerly Fidelity & guaranty Life
Insurance Company regarding your concerns and requested an explanation along
with supporting documentation. Generally, I expect to receive an initial
response within three to four weeks from the date of my letter. I will evaluate
the material received and contact you with my findings.

Did you or your husband make the required initial payment within 30 days of
10/12/05? It appears that the company may have denied coverage because the
initial payment was not received. If this is the case, then there would be not
grace period as you state. Therefore, if you have proof of the initial payment
being received and cashed by the company before November 11, 2005, it would be
very important to forward that information to us.

Do not be concerned if you do not hear from me during the next several weeks. I
will contact you after I have reviewed the response(s) and documentation. I
appreciate your patience.

Sincerely,

Elizabeth Saenz
Senior Insurance Compliance Officer
Phone: 213-346-6531
Fax: 213-897-6971
Email: saenze@insurance.ca.gov

Please refer to our file number when corresponding with us.

STATE OF CALIFORNIA                                          STEVE POIZNER, *Insurance Commissioner*
DEPARTMENT OF INSURANCE
CONSUMER SERVICES AND MARKET CONDUCT BRANCH
RATING AND UNDERWRITING SERVICES BUREAU
300 SOUTH SPRING STREET
LOS ANGELES, CA 90013
www.insurance.ca.gov

September 27, 2007

ROSA RIVERA-KEEL
291 GUERRERO  ST
SAN FRANCISCO, CA 94103

Our File Number: RUS-6260995
Regarding: OM FINANCIAL LIFE INSURANCE COMPANY

Dear MS. RIVERA-KEEL:

I apologize for the length of time it is taking to get a response from the
insurance company to the issues we have raised.

I have had several conversations with Russell Laws with Om Financial's legal
department. He had indicated to me that because of the number of issues involved
( including the payment issue, and the issue of whether the company would have
voided the contract had they known that Mr. Keel had answered "no" to the
questions regarding past drug use and arrests and that this answer was not
correct.)

Mr. Laws indicated to me that the matter had been turned over to the company
attorneys to tender to a court for a decision, but I have not received any
written confirmation of this. You would also have to have been notified if this
were the case. I am following up with him in writing today, and I hope to at
least get the company to provide you with a written status of the claim within
the next three weeks.

I thank you for your patience.

Sincerely,

Elizabeth Saenz
Senior Insurance Compliance Officer
Phone: 213-346-6531
Fax: 213-897-6971
Email: saenze@insurance.ca.gov

Please refer to our file number when corresponding with us.

**PROOF OF SERVICE**

I, the undersigned, declare as follows:

I am employed in the City and County of San Francisco, State of California. I am over the age of eighteen (18) and am not a party to this action. My business address is 135 Belvedere Street, San Francisco, California 94117.

On the date set forth below, I served the document(s) entitled:

**DECLARATION OF COUNSEL AND REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT ROSA RIVERA KEEL'S SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA'S ANTI-SLAPP STATUTE**

on the parties in this action as follows:

MANATT, PHELPS & PHILLIPS, LLP
HENRY C. WANG
CHARLES GOMEZ
11355 West Olympic Boulevard
Los Angeles, CA 9006-1614

  X   [BY MAIL] I placed the above document(s) in an envelope which was sealed, with postage thereon fully prepaid, and placed in the United States mail in San Francisco, California. I am "readily familiar" with the practice of The Law Offices of Frank S. Moore for collection and processing of correspondence for mailing, said practice being that in the ordinary course of business, mail is deposited in the United States Postal Service the same day as it is placed for collection.

____ [VIA FACSIMILE] I transmitted the above-named documents (without attachments) at approximately __:__ _.m. on _____, via facsimile number (415) 292-6091 to (310) 312-4224. The facsimile machine I used conveyed no error in the transmission. The transmission report was properly issued by the transmitting facsimile machine.

____ [VIA FEDERAL EXPRESS] I am "readily familiar" with the practice of The Law Offices of William L. Osterhoudt for collection and processing of correspondence for deposit with Federal Express for overnight delivery service. Correspondence for collection and processing is either delivered to a courier or driver authorized by Federal Express to receive documents or deposited by an employee or agent of this firm in a box or facility regularly maintained by Federal Express that same day in the ordinary course of business.

____ [VIA HAND DELIVERY BY EXPRESS COURIER] I am "readily familiar" with the practice of The Law Offices of William L. Osterhoudt for collection and processing of documents that are hand delivered via courier (Silver Bullet Delivery) and I cause the above document(s) to be delivered to Silver Bullet Delivery which in turn hand delivered the above document(s) to counsel at the address listed above on this date.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED: December 3, 2007                    /s/ signature on file
                                           Frank S. Moore

*OM FINANCIAL SERVICES COMPANY v. ROSA RIVERA KEEL, et al.*                Case No. C07-04723 MHP
DECLARATION OF COUNSEL AND REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT ROSA RIVERA KEEL'S SPECIAL
MOTION TO STRIKE PURSUANT TO CALIFORNIA'S ANTI-SLAPP STATUTE                                      4